UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANK ALBARRAN,

                                                    Plaintiff,


v.                                                                              9:24-cv-1077
                                                                                (ALB/TWD)


RIVERVIEW CORRECTIONAL FACILITY, et al.,

                                                    Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

FRANK ALBARRAN
*Plaintiff, pro se*
24-R-0153
Gouverneur Correctional Facility
Scotch Settlement Road
P.O. Box 480
Gouverneur, NY 13642

NEW YORK STATE ATTORNEY GENERAL          CHI-HSIN E. ENGELHART, ESQ.
*Attorney for Defendant*
NYS Office of The Attorney General
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

    This matter was referred for a report and recommendation by the Hon. Anthony J.

Brindisi, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Frank Albarran ("Plaintiff"), an incarcerated individual in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS"), commenced this

action pursuant to 42 U.S.C. § 1983.  *See generally*, Dkt. No. 1.[1]  Currently before the Court is a motion for summary judgment and to dismiss, filed by Defendant Ryan Wignall ("Defendant").[2] *See generally*, Dkt. No 21.  For the reasons set forth below, the undersigned recommends the Defendant's motion be granted.

## II.    BACKGROUND

Plaintiff commenced this action by filing his complaint, along with an application to proceed *in forma pauperis* ("IFP"), with the U.S. District Court for the Eastern District of New York.  *See generally*, Dkt. Nos. 1-2.  On September 4, 2024, the Honorable Ramon E. Reyes, Jr., United States District Judge, transferred the action to this District.  *See* Dkt. No. 5.  By order dated October 9, 2024, the Honorable Mae A. D'Agostino, United States District Judge, conditionally granted Plaintiff's IFP application and found "plaintiff's Eighth Amendment excessive force claim against defendant [Wignall] survives sua sponte review and requires a response."  Dkt. No. 10 at 11.

Counsel entered an appearance on behalf of Defendant Wignall.  *See generally*, Dkt. No. 18.  This matter was reassigned to Hon. Judge Brindisi by text order dated January 13, 2025. Dkt. No. 20.  On January 23, 2025, Defendant filed a motion for summary judgment and to dismiss Plaintiff's Eighth Amendment claim.  Dkt. No. 21.  The Defendant avers Plaintiff failed to exhaust his administrative remedies with respect to his excessive force claim, *see* Dkt. No. 21-

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2] In his complaint, Plaintiff identified the Defendant as "n.j." or "n.g. Widell."  Dkt. No. 1 at 1. However, in light of Defense counsel's notice of appearance, *see generally*, Dkt. No. 18, and filings in support of the Defendant's motion to dismiss, *see*, *e.g.*, Dkt. No. 21-1 at 1, the Court understands the correct spelling of the Defendant's last name to be "Wignall."

10 at 6-9, and Plaintiff's complaint fails to state an Eighth Amendment claim, therefore, dismissal under Rule 12(b)(6) is also warranted, *see* Dkt. No. 21-10 at 9-12.

A notice of the consequences of failing to respond to a summary judgment motion was sent to Plaintiff's address, Dkt. No. 22, but was returned as undeliverable, Dkt. No. 24.  Plaintiff has not filed a response to Defendant's motion or sought an extension of time to do so.

## III.    LEGAL STANDARD

### A.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial.  *Salahuddin*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit instructs that on summary judgment motions, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Jeffreys*, 426 F.3d at 554 (alteration and emphasis in original) (quoting *Anderson*, 477 U.S. at 252). In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

In applying the summary judgment standard, the district court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619

(2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Whether the plaintiff has exhausted his administrative remedies is a question of law . . . . Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer." *Jenkins v. Short*, No. 9:19-CV-1352 (GTS/TWD), 2020 WL 9264842, at \*5 (N.D.N.Y. Nov. 17, 2020) (citing *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999)) (additional citations omitted), *report and recommendation adopted*, 2021 WL 958512 (N.D.N.Y. Mar. 15, 2021).

The Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds*, *Ross v. Blake*, 578 U.S. 632 (2016). Furthermore, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). In order to properly exhaust his administrative remedies, an inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford*, 548 U.S. at 81).

DOCCS has a well-established Inmate Grievance Program ("IGP"), set forth in 7

N.Y.C.R.R. § 701 *et seq*.

> Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. [7 N.Y.C.R.R.] § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. *Id*. §§ 701.5(b)(2), (3). Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

*Hudson v. Kirkey*, No. 9:20-CV-00581 (LEK/DJS), 2023 WL 2324988, at *3 (N.D.N.Y. Mar. 2,

2023) (additional citation omitted); *see also Jackson v. Jackson*, No. 16-CV-8516 (PMH), 2021

WL 981849, at *4 (S.D.N.Y. Mar. 16, 2021) (explaining, "when a grievance concerns staff

harassment, DOCCS procedures provide for an expedited review that allows for the complaint to

bypass IGRC review and proceed before the Superintendent in the first instance.") (citing 7

N.Y.C.R.R. § 701.8).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its

own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Specifically, the

exhaustion requirement contained in § 1997e(a) "hinges on the 'availability' of administrative

remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* (citing 42 U.S.C. § 1997e(a)) (alterations in original). In *Ross*, the Supreme Court identified three circumstances in which a court may find administrative remedies are not "available" for PLRA purposes, holding:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use . . . . And finally, . . . when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id.* at 643-44. In these situations, exhaustion is not required. Additionally, the Second Circuit has observed "the three circumstances discussed in *Ross* do not appear to be exhaustive . . . ." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 n.2 (2d Cir. 2016).

## IV.    ANALYSIS

Defendant avers Plaintiff failed to exhaust his administrative remedies, as required by the PLRA, prior to commencing this action. *See generally*, Dkt. No. 21-10 at 9. The Court agrees, therefore, the undersigned recommends Defendant's motion be granted and the complaint be dismissed with prejudice in its entirety.

The facts giving rise to Plaintiff's Eighth Amendment excessive force claim occurred on May 20, 2024, in the dorm and day room areas at Riverview Correctional Facility ("Riverview"). *See* Dkt. No. 1 at 3.[3] The Defendant's alleged use of force is a proper subject for a grievance. *See* 7 N.Y.C.R.R. § 701.2(a); *see also*, *e.g.*, Dkt No. 21-7 at 3. Accordingly, Plaintiff had

---

[3] Plaintiff was confined at Riverview from the time of the alleged May 20, 2024, incident until June 20, 2024, when he was transferred to Gouverneur Correctional Facility ("Gouverneur"). *See* Dkt. No. 21-3 at 1.

twenty-one days, or until June 10, 2024, to timely file a grievance concerning the incident. *See* 7 N.Y.C.R.R. § 701.5(a); Dkt No. 21-2 at 4.

Records maintained by DOCCS indicate Plaintiff did not file any grievances while he was housed at Riverview. *See* Dkt. No. 21-2 at 4; Dkt. No. 21-4 at 1. DOCCS records similarly indicate Plaintiff did not file any grievances while he was housed Gouverneur. Dkt. No. 21-5 at 4; Dkt. No. 21-6 at 2. Finally, DOCCS records indicate Plaintiff has not appealed any grievances to the CORC. Dkt. No. 21-7 at 3-4; Dkt. No. 21-8 at 1-2. The time to file any grievances or appeal grievance determinations, if any, has long expired. *See* N.Y.C.R.R. § 701.5 *et seq*.

Therefore, as Defendant avers, and Plaintiff does not dispute, Plaintiff did not file, much less appeal to CORC, any grievances concerning Defendant Wignall's alleged violation of his Eighth Amendment rights, despite the availability of a fully functioning grievance procedure. *See*, *e.g.*, Dkt. No. 21-9 at 4. It necessarily follows that Plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment excessive force claim against the Defendant. *See*, *e.g.*, *Jones*, 549 U.S. at 218-19.

In sum, there is no genuine dispute of material fact as to whether Plaintiff failed to exhaust available administrative remedies, therefore, the Defendant is entitled to summary judgment. *See*, *e.g.*, *Polhamus v. Brinkeroff*, No. 9:23-CV-1570 (LEK/ML), 2025 WL 824874, at *6 (N.D.N.Y. Feb. 20, 2025), *report and recommendation adopted*, 2025 WL 822400 (N.D.N.Y. Mar. 14, 2025). "Because Plaintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice." *Richard v. LeClaire*, No. 9:15-CV-0006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019), *report and recommendation adopted*, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019); *see also Robinson v. Harder*, No. 9:21-CV-1322 (DNH/CFH), 2024 WL

1469076, at *9 (N.D.N.Y. Feb. 20, 2024) (explaining, "if an inmate has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.") (citing *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004)), *report and recommendation adopted*, 2024 WL 1218983 (N.D.N.Y. Mar. 21, 2024), *appeal dismissed*, No. 24-1156, 2024 WL 4677424 (2d Cir. Aug. 28, 2024).

Finally, the undersigned notes mail sent to Plaintiff at his last known address, at Gouverneur, has since been returned as undeliverable.  *See* Dkt. Nos. 23, 24.  A search of the DOCCS Incarcerated Lookup indicates Plaintiff was released to parole as of November 12, 2024.  *See* NYS DOCCS Incarcerated Lookup, https://nysdoccslookup.doccs.ny.gov/ (last visited May 5, 2025).  However, Plaintiff has not filed a change of address with the Court, as required by Local Rule 10.1(c).

## V.    CONCLUSION

Accordingly, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's Eighth Amendment excessive force claim against Defendant Wignall be **DISMISSED WITH PREJUDICE** and the complaint be dismissed; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: May 5, 2025
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

2020 WL 9264842
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sergeant SHORT, et al., Defendants.

9:19-cv-01352 (GTS/TWD)
|
Signed 11/16/2020
|
Filed 11/17/2020

**Attorneys and Law Firms**

DARELL JENKINS, Plaintiff, pro se, 18-A-0025, Southport Correctional Facility, PO Box 2000, Pine City, NY 14871.

OF COUNSEL: LAUREN ROSE EVERSLY, ESQ., Assistant Attorney General, HON. LETITIA JAMES, Attorney General for the State of New York, Attorney for Defendants, The Capitol, Albany, NY 12224.

## <u>ORDER AND REPORT-RECOMMENDATION</u>

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1**  This matter was referred for a Report and Recommendation by the Honorable Glenn T. Suddaby, Chief U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Darell Jenkins, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* civil action under 42 U.S.C. § 1983, asserting claims arising out of his incarceration at Mid-State Correctional Facility ("Mid-State"). (Dkt. No. 1.) The suit was originally filed in the United States District Court for the Western District of New York ("W.D.N.Y."), but was later transferred to this District. (Dkt. No. 6.) The District Court reviewed the complaint in accordance with 28 U.S.C. § 1915, and found only Plaintiff's First Amendment free exercise claims against Defendants Correctional Officer ("C.O.") Lindermayer, Sergeant ("Sgt.") Short, and C.O. O'Neil survived initial review and required a response. (Dkt. No. 10.)

Defendants now move for summary judgment, in lieu of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing Plaintiff failed to exhaust his administrative remedies prior to commencing this action. (Dkt. No. 21.) Plaintiff has not responded to Defendants' motion and the time to do so has expired. (*See* Dkt. Nos. 25, 26, 27, 28.) For the reasons set forth below, the Court recommends that Defendants' motion be granted.

## II. BACKGROUND

Plaintiff alleges that on September 1, 2019, at approximately 9:30AM, while Defendants were inside his cell, C.O. Lindermayer "kneeled down on the floor above [Plaintiff's] altar of Santeria, & threw [his] offerings & water away[.] (Dkt. No. 1 at 5. [1]) C.O. O'Neil then described Plaintiff's religion as "voodoo." *Id.* C.O. Lindermayer, Sgt. Short, and C.O. O'Neil told Plaintiff he was not permitted to offer "any food to [his] saints on [his] altar" and that he was not permitted to have frankincense oils. *Id.*

1      Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs. Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff filed a grievance but the grievance officer "Tapia" [2] "never answered [him]" and he "couldn't do anything because the grievance officer [did] not respond[.]" *Id.* Attached to Plaintiff's complaint is a letter dated September 27, 2019, from C. Tapia, IGP, acknowledging receipt of five pages of correspondence, assigned Grievance No. MS-24259-19. *Id.* at 8. The letter indicates Grievance No. MS-24259-19 was "forwarded to the Superintendent in accordance with Directive #4040" and that Plaintiff would be "notified of the results." *Id.* The letter stated to "Please refer to this grievance # with any future inquires." *Id.*

2      Christopher Tapia is the Inmate Grievance Program ("IGP") Supervisor at Mid-State. (Dkt. No. 23-1 at ¶ 3.)

**\*2** Plaintiff's complaint is dated September 27, 2019. *Id.* at 7. It was notarized on October 3, 2019, and was stamped received by the Clerk for the W.D.N.Y. on October 11, 2019. *Id.* The matter was subsequently transferred to this District by Order of U.S. District Judge Elizabeth A. Wolford, issued on October 15, 2019. (Dkt. No. 5.) Upon receipt of the action, this Court issued a Decision and Order denying Plaintiff's *in forma pauperis* ("IFP") application as incomplete. (Dkt. No. 7.) Plaintiff filed a second IFP application and pursuant to the District Court's March 30, 2020, Decision and Order, Plaintiff's First Amendment free exercise claims against Defendants C.O. Lindermayer, Sgt. Short, and C.O. O'Neil survived initial review, and summonses were issued as to them. (Dkt. Nos. 8, 10, 11.)

Defendants have not answered the complaint and instead move for summary judgment based solely on exhaustion grounds. (Dkt. No. 21-1.) To that end, Defendants have submitted sworn declarations from Rachel Seguin, the Assistant Director of the IGP for DOCCS, and Christopher Tapia, Supervisor of the IGP at Mid-State, describing DOCCS' administrative exhaustion process. (Dkt. Nos. 29-2, 29-3.) Defendants offer evidence that on or about September 4, 2019, Plaintiff filed a series of letters that were consolidated into Grievance No. MS-24269-19, which alleged that on September 1, 2019, during a cell integrity check, C.O. Lindermayer threw out the sacrifices at his altar. (Dkt. No. 21-2 at ¶ 6.) The letters also alleged that, at some point between September 1, 2019 and September 3, 2019, C.O. O'Neil referred to Plaintiff's religion as "voodoo," and that Sgt. Short also interfered with his religious practice. *Id.* The first page of Grievance No. MS-24269-19, was stamped received by the "IGP Office" on September 4, 2019. (*See* Dkt. No. 21-3 at 8.) Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent. (Dkt. No. 21-2 at ¶ 7.) On or about April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* There is no record of Plaintiff appealing Grievance No. MS-24269-19 to the Central Office Review Committee ("CORC"). *Id.* at ¶¶ 9, 13. Thus, Defendants argue summary judgment is appropriate in this case because Plaintiff failed to fully exhaust his administrative remedies prior to the commencement of this action. (Dkt. No. 21-1.) As noted above, Plaintiff has failed to submit any opposition to Defendants' motion.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). A verified complaint, as Plaintiff has filed in this case, is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d

Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist[.]") (citations omitted).

**\*3** Where a party is proceeding *pro se*, the court must "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at \*3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

As noted, Plaintiff did not respond to Defendants' motion for summary judgment. Defendants' motion advised Plaintiff of the consequences of failing to respond to the motion. (Dkt. No. 21 at 3.) The Clerk of the Court provided Plaintiff a similar notice. (Dkt. No. 24.) When Plaintiff failed to timely respond to the motion, the Court *sua sponte* granted Plaintiff additional time in which to do so, again advising Plaintiff of the consequences of failing to respond. (*See* Dkt. Nos. 25, 26, 27, 28.)

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see also* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion."). Moreover, all properly supported facts set forth in Defendants' Statement of Material Facts that have not been specifically controverted shall be deemed admitted. N.D.N.Y. L.R. 7.1(a)(3).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), provides, in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

**\*4** In New York State prisons, DOCCS has a well-established three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii).

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

Third, a grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Where the grievance involves allegations of employee misconduct, as alleged here, there is an expedited administrative process. *See id.* § 701.8. Complaints of harassment, once given a number and recorded by the IGP clerk, are forwarded directly to the Superintendent of the facility. *Id.* In such cases the Superintendent is required to order an investigation and render a decision within twenty-five calendar days. *Id.* § 701(a)-(f). If the Superintendent fails to respond within the required twenty-five day time limit, the inmate may appeal his grievance to CORC. *Id.* § 701.8(g). Disagreement with the Superintendent's decision in the expedited review process also requires an appeal to the CORC. *See id.* § 701.8-(g)-(h); *see also Espinal v. Goord*, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). Thereafter, CORC must render a written decision within thirty days of receipt of the appeal. *Id.* § 701.8(i). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See Hall v. Cty. of Saratoga*, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

At each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or Superintendent do not timely respond, an inmate must appeal to 'the next step,' " assuming there is a "next step" in the grievance process. *Eleby v. Smith*, No. 9:15-CV-0281(TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)).

Generally, if a plaintiff fails to follow each of the required steps prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks and citations omitted)).

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, Section 1997e(a) provides only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and citations omitted)). In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

**\*5** The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense, the defendants bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Whether the plaintiff has exhausted his administrative remedies is a question of law. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer. *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment *made in lieu of* an answer where inmate failed to exhaust administrative remedies)).

Here, it is undisputed Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. (Dkt. No. 21-2.) The record before the Court demonstrates Plaintiff completed only the first step of the grievance process before commencing this lawsuit. *Id.* As stated above, Plaintiff filed a series of letters that were consolidated into

Grievance No. MS-24269-19. *Id.* at ¶ 7. Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent for investigation in accordance with DOCCS policy on or about September 4, 2019. *Id.* at ¶ 8. On April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* at ¶ 9. However, Plaintiff did not appeal the Superintendent's denial of Grievance No. MS-24269-19 to CORC. *Id.* at ¶ 10.

For these reasons, the Court finds Plaintiff failed to exhaust his administrative remedies. *See Bennett v. Fletcher*, No. 9:17-CV-849 (GTS/CFH), 2020 WL 872491, at *7 (N.D.N.Y. Jan. 16, 2020) (citing *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.")), *report-recommendation adopted by* 2020 WL 871156 (N.D.N.Y. Feb. 21, 2020); *see, e.g., Hamm v. Farney*, No. 9:13-CV-1302 (BKS/CFH), 2017 WL 8894723, at *5 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted by* 2018 WL 922149 (N.D.N.Y. Feb. 16, 2018) (dismissing the plaintiff's complaint for failure to exhaust where the IGP supervisor and DOCCS Assistant Director of IGP both declared that "a search of the DOCCS database confirmed plaintiff's original grievance, as well as an appeal to the Superintendent, but produced no record of an appeal to CORC"); *see also Teaque v. Mullen*, No. 9:18-CV-01412 (GTS/CFH), 2019 WL 8589277, at *7 (N.D.N.Y. Dec. 17, 2019) ("Because plaintiff commenced this action before receiving a response from the Superintendent of Mid-State regarding his grievance, plaintiff did not fully exhaust his administrative remedies before commencing this action."), *report and recommendation adopted by* 2020 WL 858355 (N.D.N.Y. Feb. 21, 2020).

**\*6** "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability" under *Ross*. *Ferrer v. Racette*, No. 14-cv-1370 (GTS/DJS), 2017 WL 6459525, at *12 (N.D.N.Y. Dec. 18, 2017) (citation omitted); *see Perez v. Colon*, No. 9:19-CV-722 (GTS/DJS), 2020 WL 4549206, at *4 (N.D.N.Y. June 16, 2020) ("finding no basis appeared on the record for concluding that DOCCS' grievance procedure was unavailable to the plaintiff given he failed to respond to the defendants' motion"), *report and recommendation adopted by* 2020 WL 4530602 (N.D.N.Y. Aug. 6, 2020).

Although he did not respond to Defendants' motion, Plaintiff's verified complaint suggests administrative remedies were unavailable to him at the time he commenced this action because the "grievance officer [did] not respond[.]" (Dkt. No. 1 at 7.) Defendants recognize the Superintendent's decision was issued beyond the 25 calendar days set forth in 7 N.Y.C.R.R. § 701.8(f). (Dkt. No. 21-1 at 7-8.) However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding a lack of response at any level of review. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, C.J.) ("[A]ny failure by the IGRC or the Superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process.").

Here, when the Superintendent did not render a decision on Plaintiff's grievance within 25 days (i.e., by September 29, 2019), Plaintiff had the ability to file an appeal with CORC. *See* 7 N.Y.C.R.R. § 701.8(g). "[I]nstead of doing so, [Plaintiff] rushed to Court, without attempting to appeal (the Superintendent's non-response) to [CORC] eviscerating the purpose of the administrative remedy process." *Teaque v. Mullen*, 2020 WL 858355, at *4 (citing *Woodford*, 548 U.S. at 89 (articulating two main purposes of exhaustion of administrative remedies)). Thus, because Plaintiff failed to appeal the Superintendent's non-response to the next level, he cannot be excused from the grievance process. *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations ..., if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.' ") (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) (2015)).

Based on the foregoing, the Court agrees with Defendants that Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. *See James v. Doty*, No. 9:17-CV-1145 (MAD/CFH), 2019 WL 1474309, at *5 (N.D.N.Y. Jan. 4, 2019) ("Plaintiff does not suggest, and the record does not demonstrate, that plaintiff appealed the non-response to CORC."), *report and recommendation adopted by* 2019 WL 457694 (N.D.N.Y. Feb. 6, 2019).

2020 WL 9264842

Moreover, there is no evidence in the record showing the grievance procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence to establish an issue of fact as to unavailability due to an "opaque" administrate scheme. *See Ross*, 136 S. Ct. at 1859-60. As pointed out by Defendants, Plaintiff filed and appealed the denial of an unrelated grievance (Grievance No. MS-24271-19) to CORC on or about November 7, 2019. (Dkt. No. 21-2 at ¶ 10.) *See also Gonzalez v. Coburn*, No. 6:16-cv-6174, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) (finding the plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that he could not avail himself of it). Lastly, the record does not demonstrate prison administrators prevented Plaintiff from using the grievance procedure due to "machination, misrepresentation, or intimidation." *See Ross*, 136 S. Ct. at 1859-60. Thus, given the record and considering the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of fact that administrative remedies were available.

**\*7**  In light of the foregoing, the Court recommends granting Defendants' motion for summary judgment, as there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies. Generally, a dismissal for failure to exhaust administrative remedies is without prejudice, so that the inmate-plaintiff can cure the defect by exhausting his administrative remedies and then reinstituting his suit. *See Snider v. Melindez*, 199 F. 3d 108, 111-12 (2d Cir. 1999). However, dismissal with prejudice is appropriate where the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

Here, more than six months have passed since Plaintiff should have appealed Grievance No. MS-24269-19 to CORC. (*See* Dkt. No. 21-2 at ¶¶ 8, 9, 13.) As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's complaint with prejudice. *See Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL 2870300, at *5-6 (N.D.N.Y. June 6, 2019).

## IV. CONCLUSION

After carefully considering the record, the Court finds Plaintiff failed to exhaust his administrative remedies.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2020 WL 9264842

**All Citations**

Not Reported in Fed. Supp., 2020 WL 9264842

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Jenkins v. Short, Not Reported in Fed. Supp. (2021)

2021 WL 958512

2021 WL 958512

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sgt. SHORT; Officer Oneill; and Officer Lindermayer, Defendants.

9:19-CV-1352 (GTS/TWD)

|

Signed 03/15/2021

**Attorneys and Law Firms**

DARELL JENKINS, 18-A-0025, Plaintiff, Pro Se, Clinton Correctional Facility, P.O. Box 2000, Dannemora, New York 12929.

HON. LETITIA A. JAMES, Attorney General for the State of New York Counsel for Defendants, OF COUNSEL: LAUREN ROSE EVERSLEY, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1**  Currently before the Court, in this *pro se* prisoner civil rights action filed by Darell Jenkins ("Plaintiff") against the above three employees of the New York State Department of Corrections and Community Supervision ("Defendants") pursuant to 42 U.S.C. § 1983, are (1) United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Defendants' motion for summary judgment be granted and that Plaintiff's Complaint be dismissed with prejudice for failure to exhaust his administrative remedies, and (2) Plaintiff's Objection to the Report-Recommendation. (Dkt. Nos. 29, 30-31.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety.

**I. RELEVANT BACKGROUND**

Generally, in her Report-Recommendation, Magistrate Judge Dancks found that (1) because Plaintiff failed to exhaust his available administrative remedies before filing his Complaint, Defendants' motion for summary judgment should be granted, and (2) because Plaintiff cannot at this point cure his failure to exhaust, his Complaint should be dismissed with prejudice. (Dkt. No. 29, at 2-4, 6-13.)

Generally, in his Objection, Plaintiff asserts that his Complaint should not be dismissed with prejudice for failure to exhaust because "the Superintendent never responded back to me when I appealed the grievance." (Dkt. No. 30.) In addition, Plaintiff submits a decision from the Central Officer Review Committee, dated September 10, 2020, deciding his appeal. (Dkt. No. 31.)

**II. STANDARD OF REVIEW**

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary

Jenkins v. Short, Not Reported in Fed. Supp. (2021)

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 19 of 69

2021 WL 958512

material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[1]  *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]  *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

 **\*2**  When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

[3]  *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

Jenkins v. Short, Not Reported in Fed. Supp. (2021)
2021 WL 958512

Case 9:24-cv-01077-AJB-TWD     Document 25     Filed 05/05/25     Page 20 of 69

4      *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully considering the matter, the Court can find no error in Magistrate Judge Dancks' thorough Report-Recommendation, clear or otherwise. Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only four points.

First, the Court is unpersuaded by Plaintiff's argument in his Objection his Complaint should not be dismissed with prejudice because "the Superintendent never responded back to me when I appealed the grievance." The Court will set aside the fact that, literally speaking, this assertion is undermined by the record evidence: the Superintendent did respond to him, on April 30, 2020. (*See* Dkt. No. 21, Attach. 3, at 12 [attaching decision by Superintendent dated Apr. 30, 2020].) More important, liberally construed, Plaintiff's argument is that the Superintendent never *timely* responded to him. The problem with this argument is that it is immaterial, because Plaintiff adduces no evidence, or even argument, that the time for the Superintendent to respond had expired by October 3, 2019 (or even that he filed an appeal to the Central Office Review Committee and failed to receive a timely response by that time). Regardless of whether the Superintendent failed to timely respond to him, Plaintiff filed his Complaint in this action without waiting the necessary time for a response from him (and/or without filing an appeal to the Central Office Review Committee and waiting the necessary time for a response from it).

 **\*3** Second, the Report-Recommendation appears to repeat a typographical error contained in Defendants' Statement of Material Facts: the assertion that Plaintiff filed a grievance numbered "MS-2426*9*-19" that was distinct from the grievance that was numbered "MS-2425*9*-19." (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 6-8, 12 [Defs.' Statement of Material Fact, referencing a grievance numbered "MS-2426*9*-19"] *with* Dkt. No. 21, Attach. 2, at ¶ 13 [Defs.' Statement of Material Fact, referencing a grievance numbered "MS-2425*9*-19"]; *see also* Dkt. No. 29, at 3-4, 13 [Report-Recommendation, referencing both numbers].) In fact, the record evidence relied on by Defendants for this assertion (that there existed a grievance numbered "MS-2426*9*-19") does not support the assertion, but merely the assertion that there existed a grievance numbered "MS-2425*9*-19." (Dkt. No. 21, Attach. 3, at ¶¶ 16, 17, 20 [Tapia Decl., referencing a grievance numbered "MS-2425*9*-19"].)

However, this typographical error does not change the correctness of the Report-Recommendation's finding and conclusion that Plaintiff failed to exhaust his available administrative remedies before he filed his Complaint in this action (pursuant to the "Prison Mailbox Rule") on October 3, 2019. By that time, he had not received a decision of his grievance by the Superintendent, and could not realistically have appealed that decision (or the Superintendent's failure to issue a timely decision) to the Central Office Review Committee and received a response (or failed to receive a timely response) from it.

This is because attached to the Complaint (which is sworn and thus has the force and effect of an affidavit for purposes of a motion for summary judgment) is a notice dated September 27, 2019, advising Plaintiff that his five pages of previous correspondence (from September 1-3, 2019), had been received by the Inmate Grievance Program Supervisor, construed together as a grievance, assigned a grievance number, and forwarded to the Superintendent for decision. (Dkt. No. 1, at 8.) This failure of Plaintiff to exhaust his available administrative remedies before filing his Complaint is also asserted in Defendants' Statement of Undisputed Material Facts and not controverted by Plaintiff (despite the fact that he was twice specifically advised of the consequences of failing to properly oppose Defendants' motion and was granted three extensions of time in which to do so). (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 2, 6-8 [Defs.' Statement of Material Facts] *with* Dkt. No. 25 [Plf.'s Response].)

2021 WL 958512

Third, rather than oppose Defendants' motion, Plaintiff attempts to adduce new evidence as part of his objection to the Report-Recommendation. The Court declines to consider this late-blossoming evidence for each of two independent reasons. [5] First, Plaintiff has not persuaded the Court that he could not have presented the evidence to Magistrate Judge Dancks before the issuance of her Report-Recommendation, thus causing a waste of judicial resources (and a frustration of the purpose of the Federal Magistrates Act of 1968) if the Court were to consider it now. *See, supra,* note 2 and accompanying text of this Decision and Order. The Court notes that the document appears to have been created on or soon after September 10, 2020, and Plaintiff's final response deadline was not until November 2, 2020. Second, in any event, the document in no way shows that Plaintiff exhausted his available administrative remedies before filing his Complaint in this action; and, indeed, it contradicts any such assertion.

[5]     For the sake of brevity, the Court will set aside the fact that the bottom of the document appears missing, and the fact that the document is not introduced by an affidavit, rendering it somewhat questionable.

Fourth, and finally, although it is conceivable that this late-blossoming document could affect Magistrate Judge Dancks' finding that Plaintiff cannot now cure his failure to exhaust, the Court finds that it does not do so because, again, the Court is exercising its discretion to not consider the document: Plaintiff had a full and fair opportunity to present it to Magistrate Judge Dancks (before the issuance of her thoughtful Report-Recommendation) and he chose not to do so. [6]

[6]     The Court notes that any arguable prejudice to Plaintiff resulting from this exercise of the Court's discretion is lessened by the fact that, in its decision, the Central Office Review Committee granted Plaintiff the injunctive relief he requested in this action. (*Compare* Dkt. No. 1, at 5 [Complaint, requesting, as relief, "$50,000 and to be able to practice my religion and have frankenscent [sp] oils for my altar"] *with* Dkt. No. 31, at 1 [CORC Decision, accepting the grievance in part, and explaining that Plaintiff has been "permitted religious items"].)

**\*4  ACCORDINGLY**, it is

**ORDERED** that Magistrate Dancks' Report-Recommendation (Dkt. No. 29) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgement (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with prejudice.

The Court finds that an appeal from this Decision and Order would not be taken in good faith.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 958512

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)
Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 22 of 69
2023 WL 2324988

2023 WL 2324988
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael T. HUDSON, Plaintiff,

v.

Correction Officer C. KIRKEY, et al., Defendants.

9:20-CV-00581 (LEK/DJS)
|
Signed March 2, 2023

**Attorneys and Law Firms**

Michael T. Hudson, Easton, PA, Pro Se.

Matthew Gallagher, State of New York - Attorney General, Albany Office, Albany, NY, for Defendant Correction Officer C. Kirkey.


**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

 **\*1** Plaintiff Michael Hudson commenced this action pro se on May 28, 2020, alleging violations of Eighth Amendment rights at Mohawk Correctional Facility against Defendants Correction Officer ("C.O.") C. Kirkey, Sergeant John Doe, C.O. John Does 1–7, Nurse Jane Doe, and Doctor Jane Doe (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). On October 13, 2020, Defendants filed their first motion for summary judgment. Dkt. No. 17. Thereafter on January 26, 2021, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a Report-Recommendation recommending that this Court grant Defendants' first motion for summary judgment. Dkt. No. 25 ("January 2021 Report-Recommendation"). This Court rejected Judge Stewart's January 2021 Report-Recommendation on May 17, 2021, and denied Defendants' first motion for summary judgment. Dkt. No. 27 ("May 2021 Order").

On July 29, 2022, Defendants filed another motion for summary judgment. Dkt. No. 49 ("Motion"). Judge Stewart issued another Report-Recommendation—the underlying Report-Recommendation at issue here—recommending that Defendants' Motion be granted in part and denied in part. Dkt. No. 55 ("Report-Recommendation"). Defendants filed objections to the portion of Judge Stewart's Report-Recommendation recommending that Defendants' Motion be denied. Dkt. No. 57 ("Objections"). Plaintiff has not filed a response. See Docket. For the reasons that follow, the Court approves and adopts Judge Stewart's Report-Recommendation, with the modification that Judge Stewart hold an exhaustion hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011), to determine whether Plaintiff properly exhausted his administrative remedies concerning his excessive force claim against Kirkey.


## II. BACKGROUND

### A. Factual History

Plaintiff's factual allegations are detailed in the Report-Recommendation, familiarity with which is assumed. See R. & R. at 2–3.

### B. Report-Recommendation

In the Report-Recommendation, Judge Stewart recommended that Defendants' Motion be denied in part and granted in part. Judge Stewart recommended denying Defendants' Motion predicated on the defense of exhaustion under the Prison Litigation Reform Act ("PLRA") with respect to Plaintiff's excessive force claim against Kirkey. R. & R. at 5–7. In particular, Judge Stewart found that the record could be read to show that Plaintiff submitted a grievance that was never filed. Id. at 6. Judge Stewart also stated that Defendants failed to provide affirmative evidence to establish that no grievance was filed. Id. However, Judge Stewart recommended granting summary judgment on the rest of Plaintiff's allegations because (1) Plaintiff failed to identify the Doe Defendants; (2) Plaintiff conceded that a certain physical force incident did not occur; and (3) Plaintiff's medical indifference claim remained unexhausted. Id. at 7–8.

## III. STANDARD OF REVIEW

Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court." 28 U.S.C. § 636(b)(1)(C); see also L.R. 72.1. If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review "does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 406 (S.D.N.Y. 2002).

**\*2** However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need only review that aspect of a report-recommendation for clear error. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."); New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009))). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." Rivera v. Federal Bureau of Prisons, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019). Additionally, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance. See Hubbard v. Kelley, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.").

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is " 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co.

**Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)**

2023 WL 2324988

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 24 of 69

v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, see Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252, 106 S.Ct. 2505. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and must "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

Objections were timely filed with respect to the Report-Recommendation. See Docket. Defendants contend that Judge Stewart erred because he overlooked evidence showing that Plaintiff failed to exhaust his administrative remedies by not undertaking reasonable efforts to appeal his grievance to the superintendent level. Obj. at 2. Before addressing these arguments, the Court will discuss the relevant provisions of the PLRA and the grievance process in New York State prisons.

 **\*3**  The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In other words, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Killian, 680 F.3d at 238 (quoting Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

Nevertheless, the PLRA "contains its own textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the availab[ility] of administrative remedies." Ross v. Blake, 578 U.S. 632, 642, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016) (quotations omitted). The Supreme Court has identified three scenarios in which an administrative procedure may be deemed unavailable for purposes of PLRA exhaustion. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643, 136 S.Ct. 1850 (citations omitted). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643–644, 136 S.Ct. 1850. Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644, 136 S.Ct. 1850.

In New York State:

DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. Id. § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. Id. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. Id. §§ 701.5(b)(2), (3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. Id. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

Id. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. Id. § 701.5(d)(3)(ii).

Bryant v. Whitmore, No. 14-CV-1042, 2016 WL 7188127, at *4 (N.D.N.Y. Nov. 4, 2016), report and recommendation adopted, Bryant v. Thomas, 2016 WL 7187349 (N.D.N.Y. Dec. 9, 2016).

**\*4**  Moreover, the Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries. See Messa, 652 F.3d at 308–09 ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded."). Likewise, exhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant. See Ferguson v. Mason, No. 19-CV-927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

Here, Defendants object to Judge Stewart's conclusion that: "Defendant has not come forward with affirmative evidence on this Motion to establish that no grievance was filed. It is unclear why, if such evidence existed, it was not presented by Defendant." R. & R. at 6–7. Defendants argue that Judge Stewart erred because they contend that they have provided evidence showing that Plaintiff never filed grievances; they reference the evidence filed in their first motion for summary judgment to support this assertion. Obj. at 2–3. Defendants rely on Local Rule 7.1(b) which provides: "Documents that are on file with the Court in the same action should not be attached as exhibits to the motion papers, but rather should reference to the appropriate docket number." Obj. at 3 (citing L.R. 7.1(b)).

The Court agrees with Defendants that they have provided evidence for purposes of this motion. They need not re-file the same evidence pursuant to Local Rule 7.1(b). See Dkt. Nos 17-4; 17-8; 17-10. Nevertheless, the Court agrees with Judge Stewart's conclusion. As this Court has stated in a previous order, "this dispute essentially boils down to a clash of sworn statements." Hudson v. Kirkey, No. 20-CV-0581, 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) (Kahn, J.). Similar to the facts of the May 2021 Order, Plaintiff testified that he submitted multiple grievances that were never filed, Dkt. No. 49-1 ("Plaintiff's Deposition") at 110–12, while "Kirkey submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." Hudson, 2021 WL 1966721, at *4. However, the Court cannot resolve the action in favor of Defendants because the Court is not convinced that Defendants have satisfied their burden of proof. As this Court noted: "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because this Court is prohibited from making credibility determinations." Id. As another court in this District explained:

> [T]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless filed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him, or her, the remedy was unavailable. As a result, practically speaking, while the burden on this affirmative defense remains all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

Coleman v. Nolan, No. 15-CV-40, 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (internal citations and quotations omitted).

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 26 of 69

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

**\*5** Moreover, the framework described above "does not require a greater evidentiary showing from Plaintiff than would otherwise be required during summary judgment." Hudson, 2021 WL 1966721, at \*4 (citations omitted). "A presumption's only effect is to require the party contesting it to produce enough evidence substantiating the presumed fact's absence to withstand a motion for summary judgment." Id. Thus, as this Court explained, "once Kirkey introduced evidence that there was a functional grievance system [via Dkt. No. 17], Plaintiff could not have survived summary judgment by simply pointing to Kirkey's failure to introduce evidence that this process was specifically available to Plaintiff. Rather in order to make the presumption of availability 'vanish,' Plaintiff had to produce competent evidence supporting unavailability." Id. (citing McLean v. LaClair, No. 19-CV-1227, 2021 WL 671650, at \*8 (N.D.N.Y. Feb. 22, 2021)).

Like the Court found in the May 2021 Order, Plaintiff *has* submitted evidence supporting unavailability of administrative remedies. Plaintiff testified that he attempted to submit grievances twice, Pl.'s Dep. at 110–12, and then testified that after he inquired with prison officials about his grievances he was told, "you waited too many days to file again." Id. at 112. As a result, drawing all inferences in favor of Plaintiff, the record shows that he attempted to file his grievance twice and when he followed up, he was told he could not re-file because he "waited too many days to file again...." Id. And because "a sworn statement [or deposition] based upon personal knowledge is sufficient when opposed only by a movant's conflicting sworn statement ... Plaintiff's evidence is sufficient" to defeat summary judgment at this stage in the litigation. Hudson, 2021 WL 1966721, at \*4 (citations omitted).

Likewise, "the ... statements from each side are not necessarily inconsistent. Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it." Id. (citations omitted). See also Zulu v. Barnhart, No. 16-CV-1408, 2019 WL 2997226, at \*13, (N.D.N.Y. Apr. 22, 2019) report and recommendation adopted, No. 16-CV-1408, 2019 WL 2150628, (N.D.N.Y. May 17, 2019) ("Defendants' evidence is largely consistent with plaintiff's claim that ... the timely grievances that he attempted to submit while confined to the SHU at Marcy were not filed. The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertions that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed.").

Accordingly, Kirkey has failed to carry his burden of proof that no disputes of material fact exist regarding whether the grievance process was available to Plaintiff due to potential "machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions." McLean, 2021 WL 671650, at \*9. Thus, "[i]n order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence and parties presented." Hudson, 2021 WL 1966721, at 4. [1] See also McLean v. LaClair, No. 10-CV-1227, 2021 WL 671650, at \*9 (N.D.N.Y. Feb. 22, 2021) (Kahn, J.) (ordering an exhaustion hearing on a similar PLRA affirmative defense to assess the credibility of witnesses and evidence). As a result, holding an exhaustion hearing pursuant to Messa v. Goord before Judge Stewart is the most appropriate action.

[1]    Kirkey also argues that Plaintiff never filed an appeal, and thus failed to exhaust his remedies. See Mot. at 7. However, Kirkey already made this argument to Judge Stewart. Mot. at 9. Thus, the Court will not relitigate this argument de novo. See Forde, 341 F. Supp. 3d at 346 ("When a party makes only conclusory or general objections, or *simply reiterates the original arguments*, the Court will review the [report and recommendation] strictly for clear error.") (emphasis added). Even assuming *arguendo* that the Court reviewed this portion de novo, the Court has already found that Kirkey failed to demonstrate an absence of material fact regarding whether administrative remedies were available. Gill v. Frawley, No. 02-CV-1380, 2006 WL 1742738, 2006 U.S. Dist. LEXIS 101694 at \*44 (N.D.N.Y. May 9, 2006) (noting that "[s]ome courts have suggested that an inmate has exercised a reasonable effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official," and collecting cases). As a result, an exhaustion hearing is required. See Woodward v. Lytle, No. 16-CV-1174, 2019 WL 2527342, at \*1 (N.D.N.Y. May 24, 2019), report and recommendation adopted, 2019 WL 2524756 (N.D.N.Y June 19, 2019) (opting to issue a decision on exhaustion subsequent to a hearing).

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 27 of 69

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)
2023 WL 2324988

**\*6**  Neither party filed objections to the remaining portions of the Report-Recommendation when they were due pursuant to Fed. R. Civ. P. 6(d) and 6(a)(1)(C). See generally Docket. Consequently, the Court reviews the rest of the Report-Recommendation for clear error and finds none. Therefore, the Court adopts the Report-Recommendation with the modification regarding exhaustion.

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 55) is **APPROVED and ADOPTED** with the modification that Magistrate Judge Stewart resolve the exhaustion issues concerning Plaintiff's excessive force claim against Kirkey through a hearing; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED** with respect to all claims against the unidentified John Doe and Jane Doe defendants; and it is further

**ORDERED**, that the Clerk terminate the John Doe and Jane Doe Defendants from this action; and it is further

**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 49) is **DENIED** with respect to Plaintiff's Eighth Amendment excessive force claim against Kirkey; and it is further

**ORDERED**, that this matter is **REFERRED BACK** to Magistrate Judge Stewart to facilitate resolution of the genuine disputes of material fact surrounding Plaintiff's exhaustion of his administrative remedies, including holding an exhaustion hearing concerning his excessive force claim against Kirkey; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2023 WL 2324988

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Jackson v. Jackson, Not Reported in Fed. Supp. (2021)

2021 WL 981849

2021 WL 981849
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Robert JACKSON, Plaintiff,

v.

C.O. Angela JACKSON, et al., Defendants.

16-CV-08516 (PMH)
|
Signed 03/16/2021

**Attorneys and Law Firms**

Robert Jackson, Beacon, NY, pro se.

Amanda Yoon, NYS Office of the Attorney General, New York, NY, Rebecca Lynn Johannesen, Colorado Department of Law, Denver, CO, for Defendants.

**MEMORANDUM OPINION AND ORDER**

PHILIP M. HALPERN, United States District Judge:

**\*1** Plaintiff Robert Jackson ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Correction Officers Angela Jackson, M. Walker, and J. James (collectively, "Defendants"). (Doc. 2, "Compl."). Specifically, Plaintiff alleges that in June 2015—while incarcerated at Sing Sing Correctional Facility in Ossining, New York ("Sing Sing")—Defendants violated his constitutional rights by: (1) using excessive force against him, in violation of the Eighth Amendment; and (2) filing a false internal complaint against him, in violation of the Fourteenth Amendment. (*See generally id.*).

On July 10, 2017, Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's due process claim along with all claims for monetary damages against them in their official capacities. (Doc. 16). By Opinion & Order dated April 20, 2018, Judge Román granted Defendants' motion and granted Plaintiff leave "to file an Amended Complaint ... on or before June 19, 2018." (Doc. 19 at 8). Despite securing an extension of the time within which to file his amended pleading, Plaintiff failed to do so. Consequently, the only claim remaining in this action is one for excessive force against Defendants in their individual capacities.

Defendants filed an Answer on August 30, 2018 (Doc. 22) and, with leave of Court, filed an Amended Answer on October 2, 2019. (Doc. 29, "Am. Ans."). Shortly thereafter, in an Order issued on October 22, 2019, Judge Román "waive[d] the Initial Pre-trial Conference and direct[ed] the parties to confer and complete a Case Management Plan and Scheduling Order...." (Doc. 30). Although Plaintiff filed a proposed discovery plan on November 19, 2019 (Doc. 32), Defendants filed a letter the following day to request both an extension of time within which to submit a proposed discovery schedule and a pre-motion conference to discuss an anticipated motion for summary judgment on the sole issue of administrative exhaustion (Doc. 31). There was no further activity on the docket in this case until it was reassigned to this Court in April 2020. [1]

---

[1]     There are two docket entries reflecting reassignment of this matter from Judge Román to this Court on different dates. (*See* Apr. 3, 2020 Entry; Apr. 13, 2020 Entry).

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 29 of 69

Jackson v. Jackson, Not Reported in Fed. Supp. (2021)

2021 WL 981849

On April 13, 2020, the Court granted Defendants' request, set a briefing schedule for the extant summary judgment motion, and directed Defendants to mail a copy of that Order to Plaintiff; Defendants filed an affidavit of service the same day. (Doc. 33; Doc. 34). Approximately one month later, on May 6, 2020, Defendants filed a letter requesting an extension of the briefing schedule. (Doc. 36). In that letter, Defendants noted also that upon "conferr[ing] with the New York State Division of Parole," they had learned that Plaintiff had been released from custody and was believed to be residing at an address in New York, New York. (*Id.*). In an endorsement dated May 7, 2020, the Court granted Defendants' request to extend the briefing schedule and directed Defendants to serve a copy of that Order on Plaintiff; Defendants filed an affidavit of service the next day indicating that the Order had been mailed to Plaintiff's address in New York City. (Doc. 37; Doc. 38).

**\*2** Defendants filed their motion for summary judgment on June 15, 2020. (Doc. 39; Doc. 40, "Def. Br."). On July 23, 2020, Defendants filed a letter noting that Plaintiff's time to oppose the pending motion had passed and requesting that the Court consider the motion unopposed. (Doc. 44). The Court endorsed the letter on July 24, 2020, extended Plaintiff's time to file an opposition to August 24, 2020 *sua sponte*, and advised that "[i]f plaintiff fails to file his opposition by August 24, 2020, the motion will be deemed fully submitted and unopposed." (Doc. 45). The Court also instructed Defendants to serve a copy of that Order on Plaintiffs (*id.*); Defendants filed an affidavit of service that reflected mailings to both Fishkill and the address in New York City shortly thereafter. (Doc. 46). The Court has received no communications from Plaintiff since November 2019 and, as such, considers the motion fully submitted and unopposed.

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## **BACKGROUND**

The facts, as recited below, are taken from the Complaint, Defendants' Local Civil Rule 56.1 Statement (Doc. 42, "56.1 Stmt."), and the admissible evidence submitted by the parties.[2]

2    In support of the instant motion, defense counsel filed a Declaration annexing two affidavits (with exhibits) for the Court's consideration. (Doc. 41). The first affidavit is from Quandera T. Quick ("Quick"), the Inmate Grievance Program ("IGP") Supervisor at Sing Sing. (Doc. 41-1, "Quick Aff." ¶ 1). This affidavit attaches as exhibits copies of: (1) New York State Department of Corrections and Community Supervision Directive ("DOCCS") No. 4040 (*id.* 5-21, "Quick Ex. A"); (2) Plaintiff's June 4, 2015 Grievance ("Grievance") (*id.* at 22-23, "Quick Ex. B"); and (3) the written decision issued by Michael Capra, Sing Sing's Superintendent, on August 14, 2015 (*id.* at 24-25, "Quick Ex. C"). The second affidavit is from Rachael Seguin ("Seguin"), the Assistant Director of the IGP for DOCCS and custodian of records for the Central Office Review Committee ("CORC"). (Doc. 41-2, "Seguin Aff."). This affidavit attaches as exhibits copies of: (1) DOCCS Directive No. 4040 (*id.* at 4-20, "Seguin Ex. A"); and (2) the results of a search for appeals filed with the CORC (*id.* at 21-23, "Seguin Ex. B").

I. The Underlying Incident

Plaintiff's factual allegations, *in toto*, are as follows:

> After an arguement [sic] with C.O. Jackson in the messhall[,] I was taken to the bridge area where the defendants beat me into a seizure, then fabricated a misbehavior report to justify their actions.

(Compl. at 4). Plaintiff maintains that this incident occurred on June 4, 2015. (*Id.*).

## II. Plaintiff's Grievance

Plaintiff filed the Grievance on June 17, 2015. (Quick Aff. ¶ 9; Quick Ex. B). Therein, Plaintiff complained that as he "was walking out [of] the messhall" on June 4, 2015, "C.O. Ms. Jackson and ... other[s] ... beat me down...." (Quick Ex. B). On August 14, 2015, following an investigation into Plaintiff's complaint, the Sing Sing Superintendent issued a written decision denying the Grievance. (Quick Aff. ¶ 11; Quick Ex. C). In full, the Superintendent's written decision reads as follows:

Grievant claims staff harassment.

The grievant was interviewed by a supervisor. The grievant had nothing further to add to his original complaint and provided no witnesses.

Staff involved were interviewed and provided a written report denying the allegations of wrongdoing or harassing the grievant.

Based on the investigation conducted, insufficient evidence could be found to substantiate the grievant [sic] allegations. Grievance is denied.

(Quick Ex. C). The Superintendent's decision advised that Plaintiff had seven days to appeal the determination to CORC, should he choose to do so (*id.*); however, there is no record that Plaintiff ever appealed to CORC (Quick Aff. ¶ 12; Seguin Aff. ¶¶ 6-7; Seguin Ex. B).

## STANDARD OF REVIEW

**\*3** Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). " 'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at \*1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial...." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts...." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at \*2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners*

Jackson v. Jackson, Not Reported in Fed. Supp. (2021)

2021 WL 981849

*LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when ... law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant ... is proper"). This standard applies equally to claims for relief and affirmative defenses. *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010) ("The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...."). [3]

[3]   "[T]he failure to exhaust administrative remedies in compliance with the [Prison Litigation Reform Act] is an affirmative defense" and it "may be waived" by a defendant who fails to raise it. *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 693 n.3 (S.D.N.Y. 2016) (internal quotation marks omitted). Here, Defendants' Fourth Affirmative Defense was failure to comply with 42 U.S.C. § 1997e. (Am. Ans. ¶ 14).

**\*4**  The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-7186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff," *Adams v. George*, No. 18-CV-2630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020), but the mere fact that a litigant is *pro se* "does not relieve the plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment," *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Where, as here, a *pro se* litigant fails to oppose a motion for summary judgment, the motion may be granted as unopposed only "if: (1) the plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *McNair v. Ponte*, No. 17-CV-2976, 2020 WL 3402815, at *3 (S.D.N.Y. June 18, 2020) (quoting *Warren v. Chem. Bank*, No. 96-CV-6075, 1999 WL 1256249, at *2 (S.D.N.Y. Dec. 22, 1999)). [4]

[4]   Given the Court's conclusion that there is no genuine issue of material fact as to exhaustion, it does not need to reach Defendants' request for an evidentiary hearing should the Court find otherwise.

## **ANALYSIS**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is " 'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.' " *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.' " *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)). Accordingly, the Court looks to the process available to Plaintiff. *See Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554, at *6 (S.D.N.Y. Sept. 23, 2020).

There are three levels of review for inmate grievances at Sing Sing. *See generally Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining the three-step process). First, a grievance is reviewed by the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. (Quick Ex. A §§ 701.4, 701.5(a)-(b); Senguin Ex. A §§ 701.4, 701.5(a)-(b)). Second, should the inmate be dissatisfied with the IGRC's determination, he may appeal that

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 32 of 69

Jackson v. Jackson, Not Reported in Fed. Supp. (2021)

2021 WL 981849

decision to the Superintendent. (Quick Ex. A § 701.5(c); Senguin Ex. A § 701.5(c)). Finally, if the Superintendent's conclusions are unfavorable, the inmate may appeal that decision to CORC. (Quick Ex. A § 701.5(d); Senguin Ex. A § 701.5(d)). However, when a grievance concerns staff harassment, DOCCS procedures provide for an expedited review that allows for the complaint to bypass IGRC review and proceed before the Superintendent in the first instance. (*See* Quick Ex. A § 701.8; Senguin Ex. A § 701.8). Both the Superintendent and CORC are required to "date stamp all" grievances or appeals forwarded to them for review (Quick Ex. A §§ 701.5(c)(3), 701.5(d)(3)(i); Senguin Ex. A §§ 701.5(c)(3), 701.5(d)(3)(i)) and require entities to maintain files "for the current calendar year plus the previous four calendar years" (Quick Ex. A § 701.6(k)(3); Senguin Ex. A § 701.6(k)(3)).

**\*5** Quick represents, as custodian of records maintained by the IGP at Sing Sing, that grievances "are collected from the IGRC mailbox and processed" daily, in accordance with DOCCS procedures. (Quick Aff. ¶ 5). Quick's records reveal that Plaintiff filed the Grievance on June 17, 2015, that the Grievance was forwarded directly to the Superintendent as one concerning staff harassment, and that the Superintendent performed an investigation and issued a written decision denying the Grievance on August 14, 2015. (*Id.* ¶¶ 9-11; Quick Ex. B). However, both Quick and Seguin represent affirmatively that they have no record of Plaintiff taking the final step of appealing the Superintendent's decision to CORC. (Quick Aff. ¶12; Seguin Aff. ¶¶ 6-7).

Even while granting Plaintiff—who filed nothing in opposition to this motion, and, in fact, has filed nothing in this case at all since November 2019 (*see* Doc. 32)—every conceivable benefit of the doubt to which a *pro se* litigant is entitled, there is no genuine issue of material fact on the instant motion. Consequently, summary judgment is proper here because: (1) Defendants established that Plaintiff failed to exhaust his administrative remedies and, as such, also their entitlement to summary judgment on the affirmative defense of Plaintiff's failure to exhaust his administrative remedies as required by the PLRA; and (2) Plaintiff was warned that failure to file an opposition would result in the Court concluding that the motion was unopposed. [5]

[5]    Even if the Court did not grant Defendants' motion for summary judgment, it would dismiss the action with prejudice under Federal Rule of Civil Procedure 41(b) as a result of Plaintiff's failure to prosecute this action. Indeed, Plaintiff has not filed anything in this case since he filed a proposed discovery schedule more than a year ago.

## CONCLUSION

Based upon the foregoing, the motion for summary judgment is GRANTED.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 981849

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 824874
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William POLHAMUS, Plaintiff,

v.

Bethany BRINKEROFF, RN, Defendant.

9:23-CV-1570 (LEK/ML)
|
Signed February 20, 2025

**Attorneys and Law Firms**

WILLIAM POLHAMUS, Pro Se Plaintiff, 549 State Highway Route 235, Harpursville, New York 13787.

FRANK W. MILLER, ESQ., HANCOCK ESTABROOK, LLP, Counsel for Defendant, 1800 AXA Tower I, 100 Madison Street, Syracuse, New York 13202.

## REPORT and RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** Currently before the Court, in this civil rights action filed by William Polhamus ("Plaintiff") against defendant Bethany Brinkeroff ("Defendant"), is Defendant's unopposed motion for summary judgment pursuant to Fed. R. Civ. P. 56, and in the alternative, motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 19.) For the reasons set forth below, I recommend that Defendant's motion for summary judgment be granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

At this procedural posture, Plaintiff asserts a claim of medical indifference against Defendant pursuant to the Eighth Amendment and 42 U.S.C. § 1983. [1] (Dkt. No. 10 at 13; *see generally* Dkt. No. 1.)

[1]    Senior District Judge Lawrence E. Kahn construed Plaintiff's claim as one pursuant to the Fourteenth Amendment. (Dkt. No. 10 at 3, 5-6.) However, that was based on the Court's assumption, for purposes of initial review, that Plaintiff was a pretrial detainee. (Dkt. No. 10 at 2 n.3.) The contents of Defendant's motion make clear that at the time relevant to the Complaint, Plaintiff was a convicted and sentenced incarcerated individual. (Dkt. No. 19, Attach. 7 at ¶ 1.) As a result, Plaintiff's medical indifference claim is pursuant to the Eighth Amendment.

### B. Procedural History

Defendant filed a motion for summary judgment and motion to dismiss on April 29, 2024, which included a notification of consequences of failing to respond. (Dkt. No. 19; Dkt. No. 19, Attach. 8.) Plaintiff's deadline to respond to the motion was May 20, 2024. (Dkt. Nos. 20, 21.) On May 31, 2024, after not having received a response to the pending motion, the undersigned *sua sponte* extended the deadline for Plaintiff to respond until July 1, 2024. (Dkt. No. 24.) On July 11, 2024, after again not receiving a response to the pending motion, the undersigned *sua sponte* extended the deadline for Plaintiff to respond until

August 12, 2024. (Dkt. No. 25.) The Court cautioned Plaintiff that failure to file a response "may result in the motion being granted because the Court will not have the benefit of Plaintiff's response to consider in making its decision." (*Id.*)

On August 19, 2024, Defendant filed a letter brief in further support of her motion. (Dkt. No. 26.) Defendant also filed an affidavit of service for her letter brief. (Dkt. No. 27.)

To date, the Court has not received an opposition from Plaintiff. (*See generally* docket sheet.)

### C. Defendant's Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendant in her Statement of Material Facts and not denied by Plaintiff in a response. (Dkt. No. 19, Attach. 7.)

1. Plaintiff (age 34 at the time) was admitted and incarcerated at the Delaware County Correctional Facility ("Delaware CCF") on July 4, 2023, following his conviction of acting in a manner injurious to a child under the age of seventeen. [2]

[2]    Although Defendant fails to include a citation to the record to support this assertion, support is found at Dkt. No. 19, Attach. 4 at 2-3.

**\*2**  2. Plaintiff was sentenced to a jail term of 384 days of which, he served 241 days, before being released from Delaware CCF on March 1, 2024.

3. Upon admission to the Delaware CCF, Plaintiff was given a copy of the Inmate Handbook, which contained the jail grievance procedure. Plaintiff signed a document that acknowledged receipt of the Inmate Handbook on July 4, 2023. Plaintiff was expected to adhere to the rules of conduct, including those regarding the filing of grievances. [3]

[3]    Although Defendant cites to the affidavit of John DeMeo ¶ 17 in support of this fact, Mr. DeMeo's affidavit only contains paragraphs numbered 1-8. (Dkt. No. 19, Attach. 7 ¶ 3; *see generally* Dkt. No. 19, Attach. 3.) Notwithstanding, support for this fact is included in Mr. DeMeo's affidavit at Dkt. No. 19, Attach. 3 ¶¶ 5-6.

4. On October 24, 2023, Plaintiff was allegedly involved in an altercation with another inmate. Plaintiff alleges that as a result of that altercation, he needed medical attention.

5. Plaintiff alleges that he believed his nose was injured or broken and he wished to have X-rays performed after the altercation.

6. The Complaint does not allege that Plaintiff filed a grievance of any type against Delaware CCF or Defendant Brinkerhoff.

7. Plaintiff, at various times before and after the incident of October 24, 2023, filed grievances through the inmate grievance procedure contained in the Inmate Handbook. The grievance procedure was known by Plaintiff and used by him during the relevant period.

8. The Complaint does not allege that Plaintiff complied with the exhaustion of his administrative remedies related to the incident of October 24, 2023.

9. The Complaint does not provide an explanation for the failure to file a grievance.

10. The Complaint alleges that Plaintiff was released from Delaware CCF on March 1, 2024, with the relevant incident taking place in October of 2023.

11. The condition about which Plaintiff complains relates to prison conditions; thus, an inmate grievance had to be filed before commencing an action.

12. Plaintiff alleges that he sustained a broken nose from another inmate and there was a delay in Defendant's treatment of that claimed injury.

13. Plaintiff does not allege that Defendant caused his broken nose. In addition, the Complaint does not allege that Plaintiff sustained a serious physical injury from the broken nose.

14. The Complaint does not ascribe any specific acts or omissions to Defendant. Instead, the Complaint alleges that Defendant "ignored" Plaintiff's complaints, "intentionally treated [him] incorrectly," and similar conclusory statements.

### D. Parties' Briefing on the Motion for Summary Judgment

#### 1. Defendant's Motion for Summary Judgment

Generally, in support of her motion for summary judgment and, in the alternative to dismiss, Defendant argues that (1) Plaintiff failed to properly exhaust his administrative remedies before commencing this action; and (2) Plaintiff failed to state a claim upon which relief may be granted. (*See generally* Dkt. No. 19, Attach. 1.)

With respect to her first argument, Defendant asserts that Plaintiff filed no grievance with respect to deficient or inadequate medical care at Delaware CCF. (Dkt. No. 19, Attach. 1 at 6-10.) Defendant argues the denial of medical care is a prison condition for which an inmate grievance must be filed. (*Id.*) Defendant argues that the grievance process did not operate as a dead end, it was accessible to Plaintiff, and Plaintiff has offered no explanation for his failure to comply with exhaustion of his administrative remedies. (*Id.*)

**\*3** With respect to her second argument, Defendant asserts that the delay in treating a broken nose is not analogous to an unusually brutal or egregious beating and thus, cannot plausibly state a claim of medical indifference pursuant to the Eighth Amendment. (Dkt. No. 19, Attach. 1 at 10.)

#### 2. Defendant's Reply in Support

After the deadline for Plaintiff to respond was extended on two separate occasions and he failed to file a response in opposition, Defendant filed a reply in further support. (Dkt. No. 26.) Defendant's reply in support states that defense counsel has not received an opposition to the pending motion and requests that Defendant's motion be granted, and the Complaint be dismissed. (*Id.*)

## II. RELEVANT LEGAL STANDARDS

### A. Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). [4] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law .... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

4    As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[5] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[6] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[7]

5    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

6    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

7    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

 **\*4** Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[8]–even when the non-movant was proceeding *pro se*.[9]

8    Among other things, Local Rule 56.1 (previously contained in Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

9    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[10] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the

Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein ....");
*Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases);
*Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

10   *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 WL 325378, at *9, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1(b)(3)); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**B. Standard Governing Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1854-55, 195 L.Ed.2d 117 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

**\*5** The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 90, 126 S.Ct. 2378) (exhaustion necessitates " 'using all steps that the [government] agency holds out, and doing so properly' ").

In Delaware CCF, there is a well-established two-step incarcerated grievance procedure: (1) the incarcerated individual must file a formal grievance, form SCOC-7032-1 with the Grievance Coordinator within five days of the date of the incident giving rise to the grievance, and (2) the incarcerated individual must then appeal an adverse decision by the Grievance Coordinator, to the Chief Administrative Officer or his designee.[11] (Delaware CCF Handbook at 48-49.)

11   In the future, defense counsel is urged to provide the Court with a copy of the appropriate grievance procedure. Although Mr. DeMeo's affidavit included instructions for navigating to the Inmate Handbook on the internet, the instructions appeared outdated. Notwithstanding, the Court was able to locate the Delaware County Jail "Incarcerated Individual Rulebook 2025." ("Delaware CCF Handbook") (https://www.delawarecountysheriffny.gov/correctionalFacility, last accessed February 17, 2025). Within that document, the undersigned located IRB 7032.0 Grievance Procedure, which has an effective date of "8 July 2022." As a result, it is reasonable to infer that this was the procedure in place at the relevant time of this action. For the convenience of the assigned district judge and the parties, the Delaware CCF Handbook is attached to this Report and Recommendation as Appendix A.

The Chief Administrative Officer (or his designee) is responsible for ensuring that each grievance filed at Delaware CCF is investigated to fullest extent by an impartial person who was not involved in the circumstances giving rise to the grievance. (Delaware CCF Handbook at 49.) Each grievance investigation "shall include gathering and assessing ... (1) a description of the facts and issues underlying the circumstances of the grievance; (2) summaries of all interviews held with the grievant and with all parties involved in the grievance; (3) copies of pertinent documents; and (4) any additional relevant information." (*Id.*)

Within five business days of the receipt of a grievance, the Grievance Coordinator shall issue a written determination which shall specify the facts and reasons underlying the Coordinator's determination. (*Id.*) A copy of the determination is to be provided to the incarcerated grievant. (*Id.*) Within two business days after the incarcerated grievant receives the Grievance Coordinator's determination, the incarcerated grievant may appeal to the Chief Administrative Officer or his designee. (*Id.*)

Within five business days after receipt of the grievance appeal, the Chief Administrative Officer shall issue a determination on the grievance appeal and provide a copy of the determination to the incarcerated grievant. (*Id.*)

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

 **\*6**  The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at \*4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216, 127 S.Ct. 910. The plaintiff must then establish the grievance procedure was unavailable to him under *Ross*. *Id.*

## III. ANALYSIS

After carefully considering the matter, I recommend that Defendant's motion for summary judgment be granted based on Plaintiff's failure to exhaust his administrative remedies.

As Defendant set forth, Plaintiff failed to file any grievance related to the claims in his Complaint. (Dkt. No. 19, Attach. 1 at 6-10; Dkt. No. 19, Attach. 3 at ¶ 6.) Plaintiff has not opposed Defendant's motion and therefore has not put forth any argument or evidence suggesting that he did in fact exhaust his administrative remedies or that such remedies were somehow unavailable to him. Considering the record, the undersigned concludes that there is no genuine dispute of material fact whether Plaintiff failed to exhaust available administrative remedies: he did not. [12]

[12]    The undersigned rejects Defendant's argument seeking dismissal because "Mr. Polhamus did not allege in the complaint any compliance with any aspect of the grievance procedure." (Dkt. No. 19, Attach. 1 at 9.) The Second Circuit has clearly held that "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement," *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016), and for that reason "inmates are not required to specifically plead or demonstrate exhaustion in their complaints," *Williams*, 829 F.3d at 122 (quoting *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

As a result, I recommend that Defendant's motion for summary judgment be granted. [13]

13    Because the undersigned has determined that Plaintiff failed to comply with the PLRA's exhaustion requirement before filing this action in federal court, I have not addressed the merits of Plaintiff's claims. *See, e.g.*, *Edwards v. Arocho*, 125 F.4th 336, 350 (2d Cir. 2024) ("Having concluding that [the plaintiff]'s failure to protect claims faltered on exhaustion grounds, the District Court understandably declined to address the merits of that claim."); *Velez v. Lassiter*, 23-CV-4758, 2024 WL 4979409, at *5 n.4 (S.D.N.Y. Dec. 4, 2024) (citing *Siler v. Walden*, 20-CV-5794, 2023 WL 3871999, at *6 n.6 (S.D.N.Y. June 7, 2023); *Johnson v. Koenigsmann*, 16-CV-6523, 2018 WL 3145762, at *1 n.2 (W.D.N.Y. June 27, 2018)) ("Given my conclusion that summary judgment is proper based on Plaintiff's failure to exhaust, I need not address Defendant's arguments concerning excessive force or qualified immunity."); *Vidro v. Erfe*, 18-CV-567, 2019 WL 4738896, at *9 (D. Conn. Sept. 26, 2019) (the merits of the plaintiff's claim were "not reached" because the court had already granted summary judgment for the defendants on the basis of the plaintiff's failure to exhaust the administrative remedies available to him). If the assigned District Judge disagrees with the recommendation contained herein, it is requested that the matter be returned for the issuance of a Report and Recommendation on Defendant's argument related to the merits of Plaintiff's claim.

**\*7** **ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 19) seeking dismissal based on Plaintiff's failure to exhaust his administrative remedies be **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** in its entirety; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [14]

14    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE**: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. [15] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 6(a), 6(e), 72.

15    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2025 WL 824874

---

2025 WL 822400
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William POLHAMUS, Plaintiff,
v.
Bethany BRINKEROFF, Defendant.

9:23-CV-1570 (LEK/ML)
|
Signed March 14, 2025

**Attorneys and Law Firms**

William Polhamus, Harpursville, NY, Pro Se.

Frank W. Miller, Hancock Estabrook, LLP, Syracuse, NY, for Defendant.

## MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, United States District Judge

### I. INTRODUCTION

 **\*1**  Plaintiff William Polhamus brings this pro se action pursuant to 42 U.S.C. § 1983 against Defendant Bethany Brinkeroff, asserting a violation of his constitutional rights. Dkt. No. 1. Brinkeroff filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies and failed to state a claim. Dkt. No. 19 ("Motion"). On February 20, 2025, the Honorable Miroslav Lovric, United States Magistrate Judge, issued a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d), recommending the Motion be granted. Dkt. No. 28 ("Report and Recommendation").

No party has filed objections to the Report and Recommendation. For the reasons that follow, the Court adopts the Report and Recommendation in its entirety.

### II. BACKGROUND

The Court assumes familiarity with the factual background detailed in the Report and Recommendation. *See* R. & R. at 3–4.

In his analysis, Judge Lovric recommended granting Defendant's Motion based on Plaintiff's failure to exhaust his administrative remedies. *Id.* at 11. Plaintiff "has not put forth any argument or evidence suggesting that he did in fact exhaust his administrative remedies or that such remedies were somehow unavailable to him." *Id.* at 11–12. Accordingly, Judge Lovric concluded that "there is no genuine dispute of material fact [as to] whether Plaintiff failed to exhaust available administrative remedies: he did not." *Id.* at 12.

Judge Lovric thus recommended that the Motion be granted in its entirety. *Id.*

### III. LEGAL STANDARD

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1)(C); *see also* L.R. 72.1. However, if no objections are made, a district court need only review a report and recommendation

for clear error. *See DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019) (cleaned up). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).


**IV. DISCUSSION**

No party objected to the Report and Recommendation within fourteen days after being served with a copy of it. Accordingly, the Court reviews the Report and Recommendation for clear error. *See DiPilato*, 662 F. Supp. 2d at 339. Having found none, the Court approves and adopts the Report and Recommendation in its entirety.


**V. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation, Dkt. No. 28, is **APPROVED and ADOPTED in its entirety**; and it is further

 **\*2** **ORDERED**, that the motion for summary judgment, Dkt. No. 19, is **GRANTED**; and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


**All Citations**

Slip Copy, 2025 WL 822400

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 42 of 69

Richard v. LeClaire, Not Reported in Fed. Supp. (2019)

2019 WL 5197041

2019 WL 5197041
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John Willis RICHARD, Plaintiff,

v.

Lucien J. LECLAIRE, et al., Defendants.

9:15-CV-00006 (BKS/TWD)
|
Signed 05/06/2019

**Attorneys and Law Firms**

JOHN WILLIS RICHARD, 91-A-0169, Plaintiff pro se, Woodbourne Correctional Facility, 99 Prison Road, PO Box 1000, Woodbourne, NY 12788.

HON. LETITIA JAMES, Attorney General for the State of New York, OF COUNSEL: RYAN W. HICKEY, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224, Counsel for Defendants.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** This *pro se* lawsuit arises out of actions taken by Defendants in response to Plaintiff John Willis Richard's long-time practice of shaving designs into his beard. (*See generally* Dkt. No. 1.) Claims remaining after initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) ( . ) and Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) (Dkt. No. 67) are: (1) a Fourteenth Amendment equal protection claim against Defendants Lt. Garry Sipple ("Sipple"), Sgt. Paul Mace ("Mace"), and Corrections Officers ("CO") Wayne Jordan ("Jordan"), and Joseph Daddezio ("Daddezio"), which the Defendants did not include in their motion to dismiss (*see* Dkt. No. 61 at 3-4 [1] ); and (2) a Fourteenth Amendment due process void for vagueness claim involving Department of Corrections and Community Supervision ("DOCCS") Directive 4914 against Defendant Deputy Commissioner Lucian J. LeClaire ("LeClaire"). (Dkt. No. 67.)

[1]    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies under the DOCCS Inmate Grievance Program ("IGP") as to both claims; (2) Plaintiff cannot establish a due process claim under the vagueness doctrine; (3) Plaintiff cannot establish an equal protection claim; and (4) Defendants are entitled to qualified immunity. (Dkt. No. 88-11.) Plaintiff has filed papers in response to the motion. [2] (Dkt. No. 90.) For reasons explained below, the Court recommends that Defendants be granted summary judgment based upon Plaintiff's failure to exhaust administrative remedies and that the complaint be dismissed in its entirety.

[2]    Rather than address the substance of Defendants' motion, Plaintiff's response papers consist largely of a diatribe concerning claimed inequities, insufficiencies, and improprieties relating to discovery in the case, and the Court allowing Defendants to move for summary judgment while Plaintiff still has outstanding discovery demands. (*See generally* Dkt. 90.) Plaintiff also appears to include a motion to compel discovery, which the Court denies. *Id.* at 35. The Court notes that this action was commenced more than four years ago on January 5, 2015. (Dkt. No. 1.) The original discovery

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 43 of 69

Richard v. LeClaire, Not Reported in Fed. Supp. (2019)

2019 WL 5197041

deadline was extended by the Court on two occasions at Plaintiff's request. (Dkt. Nos. 70, 76, 83.) The final discovery deadline set by the Court was June 15, 2018, with a final dispositive motion deadline set at September 7, 2018. (Dkt. Nos. 84, 87.) The time for discovery and discovery disputes has passed, and the motion for summary judgment filed on September 7, 2018, was not, as Plaintiff contends, premature. Moreover, inasmuch as the Court is recommending summary judgment in Defendants' favor for failure to exhaust administrative remedies, additional discovery would be of no benefit to Plaintiff.

## I. FACTS RELEVANT TO PLAINTIFF'S REMAINING CLAIMS

### A. Equal Protection Claim Against Sipple, Mays, Jordan, and Daddezio

**\*2**  Plaintiff has a long history of problems with DOCCS officials over shaving designs in his beard, with Inmate Misbehavior Reports ("IMR") related to the designs being filed against him in Wende, Auburn, and Upstate Correctional facilities from 2008 through 2011. (Dkt. Nos. 1-2 at 7, 15, 35, 111; 46-5 at 22, 37.) On January 12, 2012, while Plaintiff was being housed in Sullivan Correctional Facility ("Sullivan"), Defendant Daddezio, who had been confronting Plaintiff with Defendant Mace regarding his beard design, issued an IMR for Plaintiff's refusal to follow Daddezio's order to shave his beard or grow it without shaving designs in it. (Dkt. Nos. 1 at ¶¶ 243-48; 88-5 at 104.)

Plaintiff claims Defendant Sipple approved Daddezio's IMR at Defendant Jordan's request, despite his knowledge of DOCCS rules and regulations. (Dkt. No. 1 at ¶ 242.) Jordan was the hearing officer at Plaintiff's Tier III hearing on the IMR and found Plaintiff guilty of violating a direct order. (Dkt. No. 1-2 at 114, 125.) Jordan imposed a penalty of thirty days in keeplock, with fifteen days suspended after ninety days, and thirty days loss of packages and commissary. (Dkt. No. 1-2 at 125.)

Plaintiff claims that Daddezio, Mace, Sipple, and Jordan were aware of and totally ignored white inmates who wore biker style beards or ZZ Top very long beards that violated Directive 4914, while continuing to question Plaintiff's beard and singling him out for discipline because of the designs in his beard, in violation of his Fourteenth Amendment right to equal protection. (Dkt. No. 1 at ¶¶ 231-34, 314-20.)

### B. Directive 4914

Plaintiff claims his Fourteenth Amendment due process rights were violated because Directive 4914, dated September 2, 2010, which was approved by Leclaire, was impermissibly vague with regard to whether designs were allowed in beards. (Dkt. No. 1 at ¶ 60.) During the time period in which Plaintiff was issued IMRs for refusing to shave the designs out of his beard, the September 2, 2010, version of Directive 4914 was construed inconsistently by DOCCS personnel with respect to whether it contained language prohibiting beard designs. On October 5, 2010, and January 28, 2011, (Auburn); June 10, 2011 (Upstate); and January 6, 2012, (Sullivan), Plaintiff was issued IMRs by corrections personnel for, *inter alia*, violating direct orders to shave the designs out of his beard. (Dkt. Nos. 1-2 at 111, 113; 46-5 at 22, 37.)

Vasile, the hearing officer on the Gibson October 5, 2010, IMR at Auburn concluded that Directive 4914 contained no regulation regarding beard designs. *Id.* at 27. At the Woodard January 28, 2011, IMR, hearing officer Brown, while conceding that Plaintiff had pretty compelling evidence that there was no prohibition on beard designs in Directive 4914, found Plaintiff guilty. *Id.* at 45, 76. Jordan, the hearing officer from Sullivan on the McGaw June 10, 2011, IMR, found no proof of a rule stating that Plaintiff could not have designs cut into his beard and concluded that Rule 106.10 – violating a direct order, was not supported by the evidence. *Id.* at 112. However, as noted above, at the disciplinary hearing on the Daddezio January 6, 2012, IMR, Jordan reversed course and found Plaintiff guilty of refusing a direct order. *Id.* at 125.

## II. APPLICABLE SUMMARY JUDGMENT LEGAL STANDARDS

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 44 of 69

Richard v. LeClaire, Not Reported in Fed. Supp. (2019)

2019 WL 5197041

the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

**\*3** Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] ... may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit. [3] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist....") (citations omitted).

[3]     Plaintiff's complaint in this case was properly verified under 28 U.S.C. § 1746. (Dkt. No. 1 at 131.) *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (use of the language "under penalty of perjury" substantially complies with § 1746).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." "To defeat summary judgment, ... nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation." " *Jeffreys*, 426 F.3d at 554 (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at \*3 (S.D.N.Y. Oct. 28, 1999) [4] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

[4]     Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

## III. FAILURE TO RESPOND TO MOVANTS' STATEMENT OF MATERIAL FACTS

**\*4** Plaintiff has failed to respond to Defendants' Statement Pursuant to L.R. 7.1(a)(3) setting forth the material facts as to which Defendants assert no genuine issue of fact exists. (*See generally* Dkt. No. 90.) L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."

Richard v. LeClaire, Not Reported in Fed. Supp. (2019)
2019 WL 5197041
Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 45 of 69

While *pro se* litigants are undeniably "entitled to some measure of forbearance when defending against summary judgment motions, the deference owed to pro se litigants ... does not extend to relieving them of the ramifications associated with the failure to comply with the courts local rules." *Liberati v. Gravelle*, No. 12-CV-00795 (MAD/DEP), 2013 WL 5372872, at * 7 (N.D.N.Y. Sept. 24, 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *Latouche v. Tompkins*, No. 09-CV-0308 (NAM), 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2911) ("a pro se litigant is not relieved of his duty to meet the requirements necessary to defeat a summary judgment motion").

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion. [5] *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (requirement that pro se be advised of possible consequences of failing to respond to summary judgment motion, including movant's statement of material facts pursuant to local rules); L.R. 56.2 ("Notice to Pro Se Litigants of the Consequences of Failing to Respond to a Summary Judgment Motion").

[5]  The Clerk's Office provided Plaintiff with a copy of the requisite notice of the consequences of his failure to respond properly to Defendants' summary judgment motion, including the failure to respond to Defendants statement of material facts. (Dkt. No. 89.)

Courts in this district have found it appropriate to enforce L.R. 7.1(a)(3) and its predecessor L.R. 7.1(f), by deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon the opposing party's failure to properly respond to the statement. *See, e.g., Borihane v. Outhouse*, No. 9:05-CV-1256 (NAM/DEP), 2007 WL 2071698, at *3 (N.D.N.Y. July 18, 2007) (following L.R. 7.1(a)(3) and accepting statement of material facts as uncontroverted (citing *Elgamil v. Syracuse Univ.*, No. 99-CV-611 (NPM/GLS), 2000 WL 1264122, at * 1 (N.D.N.Y. Aug. 22, 2000) (listing cases)). The Court therefore recommends that notwithstanding Plaintiff's *pro se* status, the District Court follow the practice of enforcing L.R. 7.1(a)(3) and accept the facts set forth in Defendants' Material Statement of Facts as uncontroverted to the extent those facts are supported by record evidence.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A. Legal Standard for Exhaustion Under the PLRA

 **\*5**  Under the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850, 1854-55, 195 L.Ed.2d 117 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). *See also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

In New York state prisons, DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5 (2013). Generally, the DOCCS IGP involves the following procedure for the filing of

grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance *Id.* at § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id.* at § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3)(ii).

Grievances claiming employee harassment "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* at § 701.8. Grievances concerning "[a]llegations of acts or policies which adversely affect individuals based on race, religion, nation origin, sex, sexual orientation, age, disabling condition(s)" are also subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* at § 701.5. The superintendent is required to render a decision on the grievance within twenty-five calendar days in both instances. *Id.* at §§ 701.5, 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* at § 701.8(g).

**\*6** As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,' " assuming there is another step in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at \*4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 NYCRR § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can – and must – be appealed to the next level ... to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* so that the agency addresses the issues on the merits.") (internal quotation marks, parentheses, and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotations and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 47 of 69

Richard v. LeClaire, Not Reported in Fed. Supp. (2019)

2019 WL 5197041

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones,* 549 U.S. at 216, 127 S.Ct. 910; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004), *overruled on other grounds, Woodford*, 548 U.S. at 94-95, 126 S.Ct. 2378. Plaintiff must then establish that the IGP grievance procedure was unavailable to him. *See Jones*, 549 U.S. at 216, 127 S.Ct. 910.

### B. Application of the Legal Standard to Plaintiff's Claims

**\*7** Defendants argue that the PLRA applies to both of Plaintiff's claims, and that Plaintiff failed to exhaust his administrative remedies under the PLRA with regard to both, thus entitling them to summary judgment. (Dkt. No. 88-1 at 5-8.) The Court agrees and finds that the undisputed record evidence supports Defendants' exhaustion argument with regard to both claims.

### 1. Plaintiff's Two Claims are Covered by the PLRA

The Supreme Court has held that PLRA's exhaustion requirement applies "to all inmate suits about prison life." *Porter,* 534 U.S. at 532, 122 S.Ct. 983. The DOCCS IGP defines "grievance" broadly as "a complaint, filed with the IGP Clerk, about the substance or application of any written or unwritten policy, regulation, procedure or rule of the Department of Correctional Services or any of its program units, or the lack of a policy, regulation, procedure or rule." 7 NYCRR § 701.2(a). According to Rachel Sequin ("Sequin"), Assistant Director of the DOCCS IGP, Plaintiff's equal protection on account of his race in the enforcement of the facial hair grooming rules under the Directive and vagueness claims regarding Directive 4914 are proper subjects for a grievance under the DOCCS IGP. (Dkt. No. 88-1 at ¶¶ 2, 15-16. [6] ) Plaintiff has not disputed the applicability of the IGP in his response. (*See* Dkt. No. 90.) The Court finds the IGP was applicable to Plaintiff's two remaining claims.

[6]    Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

### 2. Failure to Exhaust

When asked at his deposition if he was familiar with the IGP, Plaintiff responded in the affirmative. (Dkt. No. 88-5 at 23.) Plaintiff went on to explain that despite his familiarity, he did not file grievances because they were designed to aid corrections officers. *Id.* According to Plaintiff, the inmates who work in the grievance office snitch or rat or do whatever is necessary to get by with DOCCS, and if he were to file a grievance that had merit, those inmates would help the administration find a way to get around the issue by failing to file the grievance or manipulating the wording to make it appear the issue was something other than it was presented as by the grievant. *Id.*

Plaintiff acknowledged he never filed a grievance(s) with the IGRC with respect to his claims and he never received a decision from the IGRC. *Id.* at 24. According to Plaintiff, the only grievance he filed relating to the beard design issue was when he and his "bunky" filed grievances in 2003. *Id.* at 23-26, 105. Plaintiff testified the 2003 grievance was the only beard design related grievance that ever went to CORC. *Id.* at 27-29. Plaintiff has not denied his testimony that he did not file grievances. (*See* Dkt. Nos. 88-10 at ¶¶ 21-23; 90.)

In addition to Plaintiff's testimony admitting he did not exhaust his remaining two claims through the IGP, Defendants have submitted evidence establishing that CORC records do not reveal that any grievances were filed regarding the claims. According

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 48 of 69
Richard v. LeClaire, Not Reported in Fed. Supp. (2019)
2019 WL 5197041

to Seguin, DOCCS Directive 4040 states that it is DOCCS policy to maintain grievance files for current year and four previous years, and CORC complies with that policy. (Dkt. No. 88-1 at ¶ 17.) However, Seguin goes on to explain that the CORC database contains records of all appeals of grievances received from the IGP Supervisor, including those reviewed under § 701.8, which were decided by CORC since 1990. *Id.*

**\*8** Seguin, as Assistant Director, serves as a custodian of the records maintained by CORC, and her declaration is based on her personal knowledge and review of the grievance database maintained by CORC, which is created and kept in the ordinary course of business at DOCCS. *Id.* at ¶¶ 18-19. Seguin, conducted a diligent search of the database for appeals by Plaintiff based on grievances filed at the facility level and found no grievances related to the allegations in this lawsuit. *Id.* at ¶¶ 20-21; *see also* Dkt. No. 88-3 at 1-2. Plaintiff has not disputed Seguin's findings. (Dkt. Nos. 88-10 at ¶¶ 21-23; 90.)

Based upon the foregoing, the Court finds that Defendants have satisfied their burden of establishing that Plaintiff failed to exhaust his administrative remedies with regard to both of his remaining claims.

### 3. Availability

The Court also finds that Plaintiff has failed to submit evidence showing that the IGP grievance procedure was unavailable to him. *See Ross*, 136 S. Ct. at 1858-59; *Jones*, 549 U.S. at 216, 127 S.Ct. 910. Plaintiff, by his own admission, made no attempt to file grievances regarding either his vagueness or equal protection claims. (Dkt. No. 88-5 at 23-24.) At his deposition, he explained that he elected not to file grievances out of a belief that if he were to file a meritorious grievance, inmates working in the grievance office would assist the administration in finding a way to get around the issue. *Id.* at 23. Plaintiff testified in conclusory fashion that he had been through this numerous times in the early 1990s, prior to the present DOCCS grievance procedure coming into effect. *Id.* at 23-24.

In *Ross*, 136 S.Ct. at 1859-60, the Supreme Court found administrative grievance procedures unavailable when they operate as a simple dead end; are so opaque the procedure becomes, practically speaking, incapable of use; and when prison administrators thwart the use of a procedure through machination, misrepresentation, or intimidation. The Court gave as an example of a simple dead end a situation where a prison handbook directed inmates to submit grievances to a particular administrative office when, in practice, the office disclaimed the capacity to consider grievances. *Id.* at 1859. Plaintiff has not claimed, nor has he submitted evidence, showing that he was unable to pursue grievances on his claims because the procedures under the IGP were dead ends.

Plaintiff has not claimed that opacity of procedures under the IGP rendered the grievance procedure unavailable to him under *Ross*. Nor has Plaintiff claimed that the grievance procedure was unavailable to him with regard to the claims because prison administrators thwarted him from utilizing the IGP. Plaintiff openly acknowledged that he did not file grievances because of his beliefs they are designed to aid the corrections officers and that inmates in the grievance office help sabotage grievances filed by other inmates. (Dkt. No. 88-5 at 23.)

The Court finds that Plaintiff's conclusory assertions regarding the futility of grievances, based upon a non-specific reference to unsatisfactory experiences in the 1990s under an earlier grievance procedure, in no way satisfies his burden of showing, or even raising a material issue of fact as to, the availability of the IGP under *Ross. See, e.g., Geer v. Chapman*, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6091699, at \*5 (N.D.N.Y. Sept. 26, 2106), *adopted* 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) (denial of a previous grievance by plaintiff, which led him to believe filing a grievance with regard to his retaliation claim would be a "waste of time," did not justify his failure to exhaust with regard to that or any other claim).

### V. CONCLUSION

**\*9** Based upon the foregoing, the Court finds that Plaintiff failed to exhaust his administrative remedies with regard to both his Fourteenth Amendment equal protection claim against Defendants Sipple, Mace, Jordan, and Daddezio regarding race, and his

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 49 of 69
Richard v. LeClaire, Not Reported in Fed. Supp. (2019)
2019 WL 5197041

Fourteenth Amendment void for vagueness claim against Defendant LeClaire regarding Directive 4914. The Court, therefore, recommends that the District Court grant Defendants summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies.

Dismissal without prejudice on a failure to exhaust administrative remedies grant of summary judgment is appropriate when "a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (*Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)). Conversely, dismissal with prejudice is appropriate "where a plaintiff is effectively barred from administrative exhaustion." *McCoy v. Goord*, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2003); *see also Berry*, 366 F.3d at 88. Here, given the time that has elapsed since Plaintiff's claims against Defendants occurred, it has become impossible for Plaintiff to exhaust his administrative remedies under the DOCCS IGP with regard to those claims. *See* 7 NYCRR § 701.5(d)(1)(i); *Berkley v. Ware*, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *5 (N.D.N.Y. July 6, 2018) (plaintiff must exhaust administrative remedies, including receipt of a response from CORC, prior to filing a federal lawsuit). Because Plaintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice.

Defendants also seek summary judgment on the grounds that Plaintiff cannot establish liability on the merits and on qualified immunity grounds. (Dkt. No. 88-11 at 10-19.) Because the Court is recommending summary judgment in Defendants' favor with prejudice and dismissal of the complaint on failure to exhaust administrative remedies grounds, the Court finds it unnecessary to address Defendants' request for summary judgment on the merits of Plaintiff's claims and qualified immunity.

**ACCORDINGLY**, it is hereby

**ORDERED** that to the extent Plaintiff's response to Defendants' summary judgment motion (Dkt. No. 90) can be construed to include a motion to compel further discovery, the motion is **DENIED**; and it is

**RECOMMENDED** that Defendants motion for summary judgment (Dkt. No. 88) be **GRANTED WITH PREJUDICE** on the ground that Plaintiff failed to exhaust administrative remedies, and that the complaint be **DISMISSED IN ITS ENTIRETY**; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

**\*10** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[7]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5197041

---

Richard v. Leclaire, Not Reported in Fed. Supp. (2019)

2019 WL 4233184

2019 WL 4233184

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

John Willis RICHARD, Plaintiff,

v.

Lucien J. LECLAIRE, et al., Defendants.

9:15-cv-00006 (BKS/TWD)

|

Signed 09/06/2019

**Attorneys and Law Firms**

Plaintiff, *pro se*: John Willis Richard, 91-A-0169, Woodbourne Correctional Facility, 99 Prison Road, PO Box 1000, Woodbourne, NY 12788.

For Defendants: Letitia James, Attorney General of the State of New York, Ryan W. Hickey, Assistant Attorney General, The Capitol, Albany, NY 12224.

## MEMORANDUM-DECISION AND ORDER

Hon. Brenda K. Sannes, United States District Judge:

## I. INTRODUCTION

**\*1** Plaintiff *pro se* John Willis Richard, an inmate in the custody of the Department of Corrections and Community Supervision ("DOCCS"), brought this action against Defendants on January 5, 2015, alleging that DOCCS officials violated his Fourteenth Amendment rights to equal protection and due process by refusing to allow Plaintiff to shave designs into his beard. (Dkt. No. 1). Following a lengthy discovery period, Defendants filed a motion for summary judgment on September 7, 2018. (Dkt. No. 88). Plaintiff filed a response which appeared to include a motion to compel discovery. (Dkt. No. 90). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on May 6, 2019, issued an Order and Report-Recommendation, denying a motion to compel further discovery and recommending that Defendants' motion for summary judgment be granted on exhaustion grounds. (Dkt. No. 91, at 18).

Plaintiff has filed an objection to the Order and Report Recommendation. (Dkt. No. 94). Plaintiff objects to Magistrate Judge Dancks' decision to deny his motion to compel discovery,[1] as well as her recommendation to dismiss his claim on exhaustion grounds.[2] (*Id.*) For the reasons set forth below, the Report Recommendation is adopted in its entirety and the Order is affirmed.

[1]  In consideration of Plaintiff's *pro se* status, the Court construes this objection as an appeal from Judge Dancks' Order. (*See* Dkt. No. 91).

[2]  Plaintiff's objection papers also reargue the merits of his Fourteenth Amendment claims. (*See* Dkt. No. 94, at 30–41). Magistrate Judge Dancks did not reach these aspects of the case in her Report Recommendation. (*See* Dkt. No. 91, at 17). Because this Court adopts the Report Recommendation in its entirety and dismisses Plaintiff's claims on exhaustion grounds, the Court similarly declines to address Plaintiff's objections on the merits of his case.

## II. PLAINTIFF'S APPEAL

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 51 of 69
Richard v. Leclaire, Not Reported in Fed. Supp. (2019)
2019 WL 4233184

## A. Standard of Review

A magistrate judge may issue orders regarding nondispositive pretrial matters, and the district court reviews such orders under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Kiobel v. Millson*, 592 F.3d 78, 88 (2d Cir. 2010). "An order is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (citation and internal quotation marks omitted). "Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)). The Court therefore reviews Magistrate Judge Dancks' Order for clear error or conclusions that are contrary to law.

## B. Discussion

**\*2** Plaintiff contends that Defendants' summary judgment motion was premature. (Dkt. No. 94, at 3). According to Plaintiff, "[D]iscovery was not completed, by a long shot" because Defendants' "shenanigans" and "mailing tactics" prevented Plaintiff from receiving all of the discovery he had requested. (*Id.* at 9–10). Therefore, he objects to Magistrate Judge Dancks' decision to deny his motion to compel further discovery and, more specifically, to her "outright rejection" of Plaintiff's request for a video conference. (*Id.* at 12).

In her Order and Report-Recommendation, Magistrate Judge Dancks acknowledged the "diatribe [of] claimed inequities, insufficiencies, and improprieties relating to discovery" in Plaintiff's response to the summary judgment motion. (Dkt. No. 91, at 2 n.2). Plaintiff's objections presently before this Court read much the same way. (*See* Dkt. No. 94, at 1–16). Ultimately, these objections, though extensive, do not demonstrate any abuse of discretion on Magistrate Judge Dancks' part.

Plaintiff originally filed this lawsuit on January 5, 2015—more than four years ago. (Dkt. No. 1). Magistrate Judge Dancks managed a lengthy discovery period, which she extended twice at Plaintiff's request. (Dkt. Nos. 70, 76, 83). Following the close of discovery, Magistrate Judge Dancks further extended the deadline for filing dispositive motions at Defendants' request. (Dkt. No. 87). At that time, Magistrate Judge Dancks warned both parties that the deadline would not be extended again. (*Id.*) Moreover, in denying Plaintiff's motion to compel, Magistrate Judge Dancks reasoned that "additional discovery would be of no benefit to Plaintiff" since the undisputed record evidence indicated that he had not exhausted his administrative remedies and could not proceed with his suit in the first place. (Dkt. No. 91, at 2 n.2).

In these circumstances, the decision to deny Plaintiff's motion to compel was well within Magistrate Judge Dancks' discretion. *See Gucci America, Inc. v. Exclusive Imports Int'l*, No. 99 cv 11490, 2002 WL 1870293, at \*5, 2002 U.S. Dist. LEXIS 14837 (S.D.N.Y. Aug. 13, 2002) (finding that Magistrate Judge "properly exercised his discretion" by ending "an already extensive discovery period...."); *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007) (upholding Magistrate Judge's denial of motion to compel where requested production "would not establish" a ground for relief); *Bellinger v. Astrue*, No. 06-cv-321, 2011 WL 13294967, at \*3 (E.D.N.Y. Feb. 16, 2011) (upholding Magistrate Judge's denial of motion to compel where additional discovery may have been impossible or futile). Accordingly, the Order denying Plaintiff's motion to compel additional discovery is affirmed.

## III. PLAINTIFF'S OBJECTIONS TO THE REPORT RECOMMENDATION

### A. Standard of Review

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 52 of 69
Richard v. Leclaire, Not Reported in Fed. Supp. (2019)
2019 WL 4233184

**B. Discussion**

Plaintiff acknowledges that he did not file any formal grievances through DOCCS' Inmate Grievance Program ("IGP") related to his claims. (Dkt. No. 94, at 24). Nevertheless, he objects to Magistrate Judge Dancks' finding that he failed to exhaust his administrative remedies, asserting that he instead used an "alternative" and "original" complaint procedure to administratively exhaust his claims. (*Id.* at 19). Plaintiff claims that he submitted two letters to prison officials in January of 2012 regarding the designs in his beard, thereby exhausting his administrative remedies outside of the IGP. (*Id.* at 24).

**\*3**  As Magistrate Judge Dancks explained, in certain circumstances, "a court may find that internal administrative remedies are not available to prisoners" under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. (Dkt. No. 91, at 12 (citing *Ross v. Blake*, ⸻ U.S. ⸻, 136 S. Ct. 1850, 1859–60, 195 L.Ed.2d 117 (2016))). Here, there is no evidence that suggests that the IGP was a "simple dead end," was "incapable of use," or that Plaintiff's efforts were thwarted by "machination, misrepresentation, or intimidation." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1858). Plaintiff claims that he believed inmates working in the grievance office would assist prison administrators in finding "a way to get around the issue and do not file it or manipulate the wording" of the grievance, but, as Magistrate Judge Dancks explained, Plaintiff presented no evidence in support of his belief, which was based upon his experience in the earlier 1990s under a different grievance procedure. (Dkt. No. 88-5, at 23; Dkt. No. 91, at 16 ("Plaintiff's conclusory assertions regarding the futility of grievances, based upon a non-specific reference to unsatisfactory experiences in the 1990s under an earlier grievance procedure, in no way satisfies his burden of showing, or even raising a material issue of fact as to, the availability of the IGP under *Ross*.")). The Court concurs in that analysis. Thus, having reviewed this issue *de novo*, the Court agrees with Magistrate Judge Dancks' determination that Plaintiff failed to exhaust his administrative remedies.

**IV. CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Dancks' May 6, 2019, Order denying Plaintiff's motion to compel further discovery (Dkt. No. 91) is **AFFIRMED**, and that Plaintiff's appeal (Dkt. No. 94) is **DENIED**; and it is further

**ORDERED** that Magistrate Judge Dancks' May 6, 2019, Report Recommendation (Dkt. No. 91) is **ADOPTED** in all respects; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 88) is **GRANTED** on the ground that Plaintiff failed to exhaust administrative remedies and that Plaintiff's remaining claims are **DISMISSED with prejudice** in their entirety; and it is further

**ORDERED** that the that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules and close this case

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4233184

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 53 of 69

Robinson v. Harder, Not Reported in Fed. Supp. (2024)
2024 WL 1469076

2024 WL 1469076
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicholas ROBINSON, Plaintiff,

v.

David HARDER, [1] et al., Defendants.

[1]    Plaintiff's amended complaint names the "Broome County Sheriff" as a defendant. Am. Compl. at 1. Following section 1915 review, the Court added David Harder, the current Sheriff for Broome County, as the "Broome County Sheriff." See Dkt. No. 16 at 4 n.2. Accordingly, the Clerk is respectfully directed to amend the caption to reflect David Harder as the lead defendant.

No. 9:21-CV-01322 (DNH/CFH)
|
Signed February 20, 2024

**Attorneys and Law Firms**

NICHOLAS ROBINSON, 22-B-0369, Woodbourne Correctional Facility, 99 Prison Road, P.O. Box 1000, Woodbourne, New York 12788, Plaintiff pro se.

JENNIFER L. CHURCH, ESQ., Assistant County Attorney, Broome County Attorney's Office, Broome County Office Building, 60 Hawley Street, P.O. Box 1766, Binghamton, New York 13902, Attorney for defendants.

## REPORT-RECOMMENDATION AND ORDER [2]

[2]    This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

**\*1**    Plaintiff pro se Nicholas Robinson ("plaintiff"), an inmate who is currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants David Harder, Adam Valls, and David Stanton (collectively, "defendants") violated his constitutional rights under the First, Fourth, and Fourteenth Amendments while he was confined in the Broome County Jail as a pretrial detainee. See Dkt. No. 15 ("Am. Compl."). Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 41. Plaintiff opposed, and defendants replied. See Dkt. Nos. 51, 52. Plaintiff filed a surreply. [3] See Dkt. No. 53. For the following reasons, it is recommended that defendants' motion be granted.

[3]    A surreply is not permitted without permission from the Court. See N.D.N.Y. L.R. 7.1(a)(1) ("A surreply is not permitted."). However, out of special solicitude to plaintiff's pro se status, the undersigned will grant permission nunc pro tunc and consider plaintiff's submission. See discussion infra Section II; see also Jones v. Smith, No. 9:13-CV-1004 (GTS/DEP), 2015 WL 1414511, at *8 n.2 (N.D.N.Y. Mar. 27, 2015) (considering the plaintiff's surreply "solely out of

Case 9:24-cv-01077-AJB-TWD   Document 25   Filed 05/05/25   Page 54 of 69

Robinson v. Harder, Not Reported in Fed. Supp. (2024)

2024 WL 1469076

special solicitude to his pro se status"); Jacoby v. Conway, No. 10-CV-920, 2012 WL 2401578, at *1 n.1 (W.D.N.Y. June 25, 2012) (granting permission nunc pro tunc for the plaintiff to file a surreply).

## I. Background

On review of defendants' motion for summary judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party. See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record ... to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

### A. Plaintiff's Factual Assertions

"[B]etween the dates of June 6, 2020 and February 10, 2022[,]" "[p]laintiff was housed at the Broome County Jail" "as a pretrial detainee[.]" Am. Compl. at 4, ¶¶13-14. [4] During that time, he "was under the care, custody, and control of [David Harder,] the Broome County Sheriff." Id. at 4, ¶15.

[4]     Citations are to the pagination generated by CM/ECF, located in the header of each page.

#### 1. Conditions of Confinement

Plaintiff alleges that, "[t]hroughout the period of [his] detention[, the] Broome County Jail ... provided [him] with used underclothes inclusive of socks, underware [sic] and t-shirts." Am. Compl. at 6, ¶29. "Such clothing items were stained with fecal matter and seminal fluids or urine from the person whom previously wore these items." Id. The Broome County Jail also "provided [plaintiff] with inadequate bedding and sleeping arrangements[,]" including "stained dirty bedding (sheets), a cot ... too short for his physical stature, [5] and a thin 'yoga' mat to serve as a mattress." Id. at 7, ¶30.

[5]     "At the time of [p]laintiff's intake into the custody fo [sic] the Broome County Jail[, p]laintiff stood 6'-6" tall and weighed approximately 300 lbs." Am. Compl. at 4-5, ¶17.

*2   "Plaintiff filed several grievances concerning the dirty, stained clothing and bedding, as well as the inadequate cot and mattress provided." Am. Compl. at 7, ¶31. Although defendants David Harder and Adam Valls acknowledged his complaints, they took "no remedial action[.]" Id. "[S]leep[ing] on the above referenced yoga mat and cot" "exacerbated" plaintiff's pre-existing knee and hip injuries, as well as his mental health issues. Id. at 7, ¶32. Specifically, plaintiff suffered from "enhanced pain," "insomnia," "anxiety," and "emotional distress." Id.

#### 2. Outgoing Mail

Between July 2020 and October 2020, "[p]laintiff wrote several letters to his family and mailed them via [United States Postal Service ("USPS")]." Am. Compl. at 7, ¶34. Plaintiff's family members informed him "on several occasions" that they received his letters "unsealed" and the letters "appeared to have been opened." Id. Plaintiff made "multiple complaints that his outgoing personal mail was being opened and tampered with." [6] Id. at 8, ¶35. Following an investigation, "the Jail [A]dministration determined that the search of [p]laintiff's mail was being wrongfully conducted by [defendants Adam Valls and David Stanton.]" Id. The Jail Administration "assured" plaintiff that Valls' and Stanton's "conduct would be discontinued." Id. at 8, ¶36.

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 55 of 69

**Robinson v. Harder, Not Reported in Fed. Supp. (2024)**

2024 WL 1469076

6    "Upon information and belief, no order or probable cause was issued for the search of [p]laintiff's outgoing mail by any court of competent jurisdiction, nor by the administrative officers of the Jail." Am. Compl. at 8, ¶37.

### B. Defendants' Factual Assertions [7]

7    In support of their motion, defendants filed a Statement of Material Facts. See Dkt. No. 41-5.

### 1. Clothing and Bedding at the Facility

Plaintiff was "booked into the [Broome County Jail (the "Facility")] on June 6, 2020." Dkt. No. 41-5, at 3, ¶16. At that time, "[p]laintiff received an Inmate Handbook," which "addresses the Facility's policy and procedures with respect to clothing and linen issued to inmates, as well as the laundry exchange of such items." Id. at 3, ¶¶16-17. "Inmates are issued clean linen and clothing which could be new or used." Id. at 3, ¶17. "The laundry exchange provision specifically instructs inmates on how to remove and replace dirty clothing and linen with clean clothing and linen." Id.

"Plaintiff testified that on various occasions during his incarceration[, the Facility] provided [him with] dirty clothing and linen[s,]" and "when [the Facility] issued [him] new clothing and bed linens to replace the [dirty] ones ..., the replacement items were 'washed with piss stains and shit streaks.' " Dkt. No. 41-5, at 4-5, ¶¶24, 28. However, "[p]laintiff admitted he was aware that not all inmates receive brand new clothing and linens" and "that the Facility has laundry services to routinely wash inmate clothing and bed linens." Id. at 4, ¶¶25-26.

Plaintiff "filed a grievance claiming [the Facility] issued [him] 'soiled' clothing from laundry exchange." Dkt. No. 41-5 at 5, ¶31. A grievance officer, however, denied plaintiff's grievance because plaintiff "refused to provide any clarification or proof of possession of any soiled clothing or linens when asked." Id. The Chief Administration Officer ("CAO") also denied plaintiff's grievance on the merits. See id. at 5, ¶32. "Plaintiff appealed the [CAO]'s decision to the Citizen's Policy and Complaint Review Council[,] which sustained the action taken by the Facility." Id. at 5, ¶33.

### 2. Bed Size at the Facility

"[D]uring the vast majority of his incarceration[,]" plaintiff slept on a standard inmate bed, "which includes a green mattress on a flat wooden or cement based, depicting the length of approximately 81 inches and width of approximately 33 inches." Dkt. No. 41-5 at 6, ¶38. However, for "relatively short durations of time[,]" plaintiff slept "on the bottom of a dorm bunk bed[,]" [8] which measures "approximately 75 inches in length with a width of approximately 31 inches." Id. at 6, ¶¶40, 42. "All of the beds [p]laintiff slept on at the Facility were longer than his height, with the exception of ... the dorm bunk beds which were approximately 4 inches shorter than his height." Id. at 7, ¶46. Plaintiff admitted that his feet would hang off the bed, but "not too far[.]" Id. at 7, ¶47.

8    "Plaintiff was never double-bunked with another inmate during his ... incarceration, meaning he [never] share[d] a dorm bunk bed with another inmate." Dkt. No. 41-5 at 6, ¶41.

**\*3**    "On September 15, 2020, [p]laintiff submitted a grievance stating 'I am 6'7' and wish for a tall boy bed and double mattress pertaining to the pain inside my hip.' " Dkt. No. 41-5 at 7, ¶48. That day, Valls advised plaintiff that he could not be issued a " 'tallboy bed' or a double mattress since he would need to request that accommodation from the medical unit." Id. at 7, ¶49. "On September 17, 2020, ... Valls forwarded [p]laintiff's grievance to Mary Rose, a [nonparty] Registered Nurse, for answers specific to medical complaints, including [p]laintiff's request for a 'tall boy bed.' " Id. at 7, ¶50. "On that same date, Ms. Rose [responded] 'Grievant request for a "big boy bed." Physician has to authorize this, and a double mattress is allowed only for

special medical conditions, such as pregnancy.' " Id. at 7, ¶51. Shortly after, Valls denied plaintiff's grievance on the merits. See id. at 8, ¶52. Plaintiff appealed Valls' denial, and on September 24, 2020, the CAO denied plaintiff's grievance. See id. at 8, ¶¶52-53. "On September 25, 2020, plaintiff appealed the [CAO]'s decision to the Citizen's Policy and Complaint Review Council," and the Council "denied the same, sustaining the action taken by the Facility." Id. at 8, ¶¶54-55.

### 3. Outgoing Mail

Plaintiff's cause of action as it relates to his outgoing mail "arose during on two unspecified occasions during the timeframe of July to October 2020." Dkt. No. 41-5 at 8, ¶60. "Plaintiff testified that only his girlfriend, Maryanne Tyler, received a letter from him which he believed was open and that this occurred on two occasions." Id. at 9, ¶64. "Plaintiff and Ms. Tyler both admitted his mail could have been opened or torn by workers at the post office." Id. at 9, ¶66.

"On August 4, 2020, ... Valls received a number of [grievances] from [p]laintiff, including his complaint that his out-going mail was being intercepted by the Facility[.]" Dkt. No. 41-5 at 9, ¶68. Stanton assisted Valls with the investigation of plaintiff's grievance, and they took the investigation "very seriously." Id. at 9-10, at ¶¶69-70. "Valls and Stanton interviewed [p]laintiff to obtain additional information regarding [his] complaint[.]" Id. at 10, ¶70. "Pursuant to the investigation, ... Stanton called Ms. Tyler [and she] explained ... that she received two letters from [p]laintiff which were both slightly torn on the end and she was not sure whether it had been torn by someone at the Facility or damaged in transit." Id. at 10, ¶71. "Ms. Tyler stated that she would speak to the postmaster, and ... Stanton gave her his information and office number so that she could contact him if she had any further issues." Id.

"On August 5, 2020, ... Valls completed his investigation and determined that [p]laintiff's out-going mail was not and will not be searched as there was no evidence to suggest this occurred and the Facility did not have an order to search his out-going mail." Dkt. No. 41-5 at 10, ¶72. "On that same date, ... Valls spoke to [p]laintiff and advised him his grievance concerning his out-going mail was investigated and it was denied on the merits[.]" Id. Valls also "encouraged [plaintiff] to seek a remedy with the post office." Id. "Plaintiff voluntarily accepted ... Valls' decision in writing" and did not appeal it to the CAO or the Citizen's Policy and Complaint Review Council. Id. at 10, ¶73.

### II. Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

 **\*4** If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court ... must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. See <u>Treistman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[ ]" ....

<u>Id.</u> (citations omitted); <u>see</u> <u>also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### III. Discussion

Plaintiff alleges that Harder and Valls violated his Fourteenth Amendment rights by failing to remedy the "unlawful" conditions of his confinement, including the "stained[,] dirty bedding and underclothes" as well as the "inadequate sleeping quarters." Am. Compl. at 9, ¶40; Dkt. No. 51 at 7. Plaintiff also brings First and Fourth Amendment claims against Valls and Stanton for "search[ing his] outgoing personal mail, without lawful privilege or other lawful justification[.]" Am. Compl. at 8, ¶39. Defendants move for summary judgment, arguing that "nothing from the facts support [p]laintiff's conclusory allegations that his First, Fourth and Fourteenth Amendment rights were violated and such, a question of fact does not exist." Dkt. No. 52-1 at 6; <u>see</u> generally Dkt. No. 41-6.

### A. N.D.N.Y. Local Rules

As an initial matter, defendants assert that plaintiff's opposition papers do not comply with the Local Rules and, therefore, should not be considered. See Dkt. No. 52-1 at 2-4. Specifically, defendants contend that (1) plaintiff's opposition papers are untimely; and (2) plaintiff failed to properly respond to their Statement of Material Facts. See <u>id.</u>

First, Local Rule 7.1(a)(3) provides that "[t]he Court shall not consider any [opposition papers] that are not timely filed ... unless good cause is shown." N.D.N.Y. L.R. 7.1(a)(3). "However, it is well-established that pro se plaintiffs are 'entitled to certain latitude,' especially when facing a dispositive motion." <u>McAdoo v. Jagiello</u>, No. 9:10-CV-355, 2011 WL 1577236, at *2 (N.D.N.Y. Apr. 26, 2011) (quoting <u>Jemzura v. Pub. Serv. Comm'n</u>, 961 F. Supp. 406, 415 (N.D.N.Y. 1997), and citing <u>Murray v. Goord</u>, 668 F. Supp. 2d 344, 353 (N.D.N.Y. 2009)). [9]

---

[9]   All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

**\*5**  After defendants filed their motion for summary judgment on May 26, 2023, the Court notified plaintiff that his opposition papers were due on June 16, 2023. <u>See</u> Dkt. Nos. 41, 43. On June 5, 2023, plaintiff requested an extension of time to file and serve opposition papers. <u>See</u> Dkt. No. 47; <u>see also</u> Dkt. No. 53 at 7. On June 13, 2023, defendants indicated their non-opposition to an extension but asked the Court to reset the deadline for their reply (which was June 23, 2023) to after July 4, 2023. <u>See</u> Dkt. No. 49. The Court did not respond to plaintiff's or defendants' request, and plaintiff filed his opposition papers on July 12, 2023. <u>See</u> Dkt. No. 51. Defense counsel and the Court received the opposition on July 20, 2023. <u>See</u> <u>id.</u> Defendants filed a reply on July 28, 2023. <u>See</u> Dkt. No. 52-1.

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 58 of 69

Robinson v. Harder, Not Reported in Fed. Supp. (2024)

2024 WL 1469076

The undersigned recognizes that plaintiff's opposition papers are untimely, as an extension of time was never granted by this Court. However, in light of special solicitude, and because plaintiff's delay did not result in any appreciable harm or prejudice to defendants, [10] plaintiff's response will be considered. See McAdoo, 2011 WL 1577236, at *2 ("Given the latitude owed to pro se litigants, and in an abundance of caution, [the] plaintiff's [late] response [to the defendant's motion] will be considered."); see also Brown v. City of Syracuse, No. 5:11-CV-668 (FJS/ATB), 2013 WL 1294085, at *1 n.2 (N.D.N.Y. Mar. 28, 2013) (considering the plaintiff's late response, and advising the plaintiff "that the Court will not consider any late filings in the future"). The Court reminds plaintiff that he must abide by all court deadlines.

[10]    The undersigned notes that defendants filed their reply on July 28, 2023, eight days after receiving plaintiff's opposition papers. See Dkt. No. 52-1. Under Local Rule 7.1(a)(1), "[t]he moving party must file and serve its reply papers ... no more than SEVEN (7) DAYS after service of the [nonmoving party's] response papers." Thus, defendants had sufficient time to file their reply.

Second, Local Rule 56.1 requires a party moving for summary judgment to file and serve a Statement of Material Facts. See N.D.N.Y. L.R. 56.1(a). "The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Id. The opposing party is required to file a response to the Statement of Material Facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis omitted).

In response to defendants' motion for summary judgment, plaintiff filed a document entitled "Plaintiff's Facts to be Disputed[.]" Dkt. No. 51 at 12-13. This document is not properly responsive to defendants' Statement of Material Facts because it does not admit or deny defendants' "assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b); see Dkt. No. 51 at 12-13. Instead, this document summarily lists the paragraph numbers that plaintiff acknowledges and the paragraph numbers that he disputes. See Dkt. No. 51 at 12-13. Defendants argue that because plaintiff failed to submit an adequate response to their Statement of Material Facts, the facts set forth in defendants' Statements of Material Facts must be deemed admitted. See Dkt. No. 52-1 at 4.

The undersigned is not required to " 'perform an independent review of the record to find proof of a factual dispute[.]' " Prestopnik v. Whelan, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (quoting Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002)). Although defendants argue, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," pro se plaintiffs are afforded special solicitude in this Circuit. N.D.N.Y. L.R. 56.1(b); see discussion supra Section II. Accordingly, in deference to plaintiff's pro se status, the Court will independently review the record when evaluating defendants' motion for summary judgment, and "treat [plaintiff's] opposition as a response to" defendants' Statement of Material Facts. Johnson v. Lew, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to [the p]laintiff as a pro se civil rights litigant, however, the Court will treat his opposition as a response to [the d]efendant's [ ] Statement, carefully reviewing it for any record-supported disputation of [the d]efendant's [ ] Statement."); see Perry v. Ogdensburg Corr. Facility, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) (determining that "although [the p]laintiff failed to respond to the statement of material facts filed by [the d]efendants as required under [the] Local Rule[s], the Court would invoke its discretion to review the entire record when evaluating the parties' respective [m]otions for summary judgment.").

### B. Exhaustion of Administrative Remedies

**\*6**  Defendants argue that plaintiff failed to exhaust his administrative remedies regarding his First and Fourth Amendment claims against Valls and Stanton, which "necessitate[s] a dismissal" of those claims. Dkt. No. 41-6 at 6 (citing Richardson v.

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 59 of 69

Robinson v. Harder, Not Reported in Fed. Supp. (2024)

2024 WL 1469076

Romano, No. 00-CV-1076 (LEK/DEP), 2003 WL 1877955, at *2 (N.D.N.Y. Mar. 31, 2003)). Specifically, defendants contend that plaintiff failed to appeal Valls' denial of his grievance relating to his outgoing mail claim. See Dkt. No. 41-6 at 4-6.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration. [11]    See 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. See id. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated." Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); see Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself").

[11]    "[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees." Baez v. Parks, No. 02-CV-5821 (PKC/DF), 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004) (collecting cases).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011). Nonetheless, "the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). A defendant satisfies this burden by "establishing ... that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003), and Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999)). "However, once a defendant has produced reliable evidence that such remedies are generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).

There is no genuine dispute that, at all relevant times, Broome County Jail had in place a seven-step grievance procedure. See Dkt. No. 41-7 at 4; see also Peoples v. Hrebin, No. 9:19-CV-1600 (GLS/CFH), 2021 WL 4312449, at *4 (N.D.N.Y. July 1, 2021), report and recommendation adopted, 2021 WL 3285005 (N.D.N.Y. Aug. 2, 2021). First, the inmate must "[a]ttempt to get the issue resolved with the housing officer." Dkt. No. 41-7 at 4. Second, "[i]f a resolution cannot be found [the inmate] may request a grievance form from the grievance officer[,]" who "conducts daily unit tours." Id. The inmate "must file the grievance within [five] days." Id. Third, the "grievance will be investigated and [the inmate] will receive a written determination from the grievance coordinator within five (5) business days." Id. Fourth, if the inmate is "not satisfied with the grievance coordinator's decision, [the inmate] may appeal the determination to the Corrections Facility Administrator within two (2) business days." Id. at 2. Fifth, the inmate "will receive a response within five (5) business days." Id. Sixth, if the inmate is "still ... not satisfied with the determination [the inmate] may appeal within three (3) business days and [the inmate's] grievance will be sent to the State Commission of Correction within three (3) business days." Id. Seventh, the inmate "will receive a response from the Commission of Correction within forty-five (45) business days of their receipt of the grievance." Id.

### 1. Whether Plaintiff Exhausted His Administrative Remedies

**\*7**  Defendants contend that plaintiff's First and Fourth Amendment claims against Valls and Stanton should be dismissed because "[p]laintiff failed to use all the steps of the Facility's grievance policy which resulted in his failure to exhaust his administrative remedies." Dkt. No. 41-6 at 6. Defendants assert that plaintiff was aware of the grievance process, and it was always available to him. See id. at 5-6. Defendants acknowledge that plaintiff filed a grievance alleging his outgoing mail was being searched by the Facility, but Valls denied such grievance on the merits and plaintiff "voluntarily accepted" Valls' decision. Id. Defendants argue that despite "fully underst[anding] he had the opportunity to appeal" Valls' denial of his grievance, plaintiff failed to do so and, thus, failed to exhaust. Id. at 6.

Both Valls and Stanton have submitted sworn declarations in support of their arguments. See Dkt. Nos. 41-3, 41-4. In his declaration, Valls explains that (1) he is "employed by the Broome County Sheriff's Office as a Grievance Officer and Hearing Officer for the Broome County Correctional Facility"; (2) on August 4, 2020, plaintiff filed a complaint "that his out-going mail was being intercepted by the Facility"; (3) he and Stanton investigated plaintiff's grievance, and "[p]ursuant to the investigation," they interviewed plaintiff and plaintiff's girlfriend; (4) on August 5, 2020, they completed their investigation and determined that plaintiff's outgoing mail was not being searched by the Facility; (5) that same day, he denied plaintiff's grievance on the merits, and plaintiff voluntarily accepted his decision in writing; and, (6) "[p]laintiff fully understood he had the opportunity to appeal [the] decision to the Citizen's Policy and Complaint Review Council as [plaintiff] had done in the past" but did not do so. Dkt. No. 41-4 at 1-4. Stanton similarly declares that he assisted Valls with the investigation of plaintiff's grievance, and they took their investigation "seriously." Dkt. No. 41-3 at 5, ¶25.

The record reflects that plaintiff accepted, in writing, Valls' decision. See Dkt. No. 41-15 at 1; see also Dkt. No. 41-16 at 4. Further, plaintiff does not dispute that he failed to appeal Valls' decision to the CAO or the Citizen's Policy and Complaint Review Council. See generally Dkt. Nos. 51, 53; see also Dkt. No. 41-18 at 83-85 (acknowledging that he accepted Valls' denial of his grievance); Allen v. Kunkel, No. 3:18-CV-297 (JCH), 2018 WL 3553335, at *2, 5-6 (D. Conn. July 23, 2018) (concluding, where the plaintiff "d[id] not dispute that he failed to fully comply with the ... administrative remedy procedure," that the plaintiff "failed to properly exhaust his administrative remedies"). Thus, defendants have met their burden of demonstrating that a grievance procedure existed, and that plaintiff failed to exhaust administrative remedies relating to his outgoing mail complaint. As a result, the undersigned must assess whether administrative remedies were available to plaintiff.

### 2. Availability as to Plaintiff

"[T]he PLRA requires 'proper exhaustion,' which " 'means using all steps that the agency holds out, and doing so properly[.]' " Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 548 U.S. at 90, and Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies[.]" Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets omitted). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id. Availability means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' " Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

 **8  There are "three kinds of circumstances in which an administrative remedy ... is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Plaintiff alleges that Valls "coerced" him into accepting the grievance determination and not pursuing the matter further. See Dkt. No. 41-18 at 84-85 (testifying that "Adam Valls coerced [him]" into signing the decision, given that Valls "came to [his] cell, said, sign this, and [Valls would] work a deal to try to get [him] out of the box"). Reading plaintiff's submissions with due solicitude, the undersigned considers plaintiff's assertions to mean that the grievance process was unavailable to him because Valls "thwart[ed him] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. 643-44; see Hubbs, 788 F.3d at 59 (noting that administrative remedies can be considered "unavailable" if the plaintiff can show that he received threats from correction officers preventing him from appealing his grievance).

Robinson v. Harder, Not Reported in Fed. Supp. (2024)
Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 61 of 69
2024 WL 1469076

To successfully allege unavailability, "[a]n inmate must point to some affirmative action by a prison official that prevented the inmate from availing himself of the grievance procedures." Martinaj v. Uhler, No. 9:18-CV-257 (BKS/DJS), 2021 WL 3793769, at *7 (N.D.N.Y. Aug. 26, 2021) (citing Grafton v. Hesse, 783 F. App'x 29, 31 (2d Cir. 2019) (summary order), and Ruggiero, 467 F.3d at 178). This Circuit has "held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011) (citing Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004), and Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004)); see also Cicio v. Alvarez, No. 19-CV-9883 (CS), 2022 WL 1003796, at *4 (S.D.N.Y. Apr. 4, 2022) ("Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable.") (citation and quotation marks omitted); Romano v. Lisson, No. 1:16-CV-81 (RJA/MJR), 2022 WL 14687072, at *12 (W.D.N.Y. Sept. 29, 2022) (denying summary judgment where the inmate plaintiff established "a genuine dispute as to whether" administrative remedies were available to him, specifically as to whether the "defendants were thwarting the grievance system through misrepresentation or coercion"), report and recommendation adopted, 2022 WL 14674773 (W.D.N.Y. Oct. 25, 2022).

In Hunter v. Rouse, the inmate plaintiff alleged "that he did not file a grievance because he feared retaliation from [the d]efendants," who he alleged assaulted him. Hunter v. Rouse, No. 9:20-CV-65 (LEK/DJS), 2020 WL 8474744, at *3 (N.D.N.Y. Sept. 17, 2020), report and recommendation adopted, 2021 WL 101083 (N.D.N.Y. Jan. 12, 2021). Specifically, the "[p]laintiff allege[d that one of the defendants] told him that if he told 'anyone what happened, the next time [the plaintiff] won't walk away.'" Id. at *4. This Court determined that the plaintiff's allegations were "more than a generalized fear of retaliation" and, therefore, "sufficiently reasonable to render administrative remedies unavailable." Id.; see also Galberth v. Durkin, No. 9:14-CV-0115 (BKS/ATB), 2014 WL 7409915, at *8 (N.D.N.Y. Dec. 31, 2014) (holding that the defendants' threats that the plaintiff "would be beaten within an inch of his life" if he told anyone about the alleged assault was more than a generalized fear of retaliation and excused the plaintiff's failure to exhaust).

*9  By contrast, "[c]onclusory allegations of intimidation are insufficient to establish the unavailability of administrative remedies[.]" Medina v. Kaplan, No. 16-CV-7223 (KMK), 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) (citing Khudan v. Lee, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016)); see Lucente v. Cnty. of Suffolk, 980 F.3d 284, 312-13 (2d Cir. 2020). "Accusations which are 'unsupported' and 'stand alone' are similarly insufficient." Medina, 2018 WL 797330, at *5. Where an inmate plaintiff claimed that "no grievance was filed was due to the fact that [he] felt that there would be retaliation against [him] if [he] did file such documents," this Court concluded that the plaintiff "fail[ed] to allege how any individual prevented him from filing a grievance" and merely stated "a generalized fear of retaliation"; therefore, the Court granted the defendants' motion for summary judgment. Rodriguez v. Landry, No. 9:20-CV-556 (BKS/TWD), 2020 WL 6747806, at *5-6 (N.D.N.Y. Oct. 26, 2020), report and recommendation adopted, 2020 WL 6743077 (N.D.N.Y. Nov. 17, 2020).

Here, plaintiff has failed to allege any facts beyond his vague allegation that Valls "coerced" him into not pursuing the matter further to support a finding that remedies were unavailable to him due to "machination, misrepresentation, or intimidation." Dkt. No. 41-18 at 84; Ross, 578 U.S. at 644; see Massey v. City of New York, No. 20-CV-5665 (GBD/DF), 2021 WL 4943564, at *9 (S.D.N.Y. Aug. 30, 2021) (explaining that the plaintiff's "conclusory allegation [that a prison administrator] intimidated [him] fails to serve as an adequate basis" to excuse the plaintiff from exhausting his remedies), report and recommendation adopted, 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021), aff'd, 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021); see also Edwards v. DeStafano, No. 13-CV-4345 (JS/JMW), 2023 WL 6594013, at *7 (E.D.N.Y. July 14, 2023) ("[The p]laintiff's conclusory arguments ... are insufficient evidence of an actual error, manipulation, conspiracy or scheme that caused [the p]laintiff's grievances to not being filed."), report and recommendation adopted sub nom. Edwards v. DeStefano, 2023 WL 6307341 (E.D.N.Y. Sept. 28, 2023). Moreover, Valls asserts that he "never advised [p]laintiff that if [plaintiff] accepted [the] decision, [he] would work out a deal to have [plaintiff] removed from the box, also known as the special housing unit." Dkt. No. 41-4 at 4, ¶19. Plaintiff has not responded to Valls' declaration. See generally Dkt. Nos. 51, 53; see also Magassouba v. Cross, No. 08-CV-4560 (RJH/HBP), 2010 WL 1047662, at *10 (S.D.N.Y. Mar. 1, 2010) ("An inmate's perception ... that the grievance process will be unsuccessful [ ] does not relieve an inmate of the exhaustion requirement.") (collecting cases), report and recommendation adopted, 2010 WL 4908670 (S.D.N.Y. Nov. 30, 2010). Thus, plaintiff has not demonstrated that Valls' alleged coercion rendered the prison grievance system unavailable to him.

Robinson v. Harder, Not Reported in Fed. Supp. (2024)
2024 WL 1469076

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 62 of 69

Accordingly, as defendants have met their burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to his First and Fourth Amendment claims against Valls and Stanton, the undersigned recommends granting defendants' Motion for Summary Judgement as to those claims.

### 3. Dismissal With Prejudice

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." Brown v. Napoli, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009) (citing Chisholm v. N.Y.C. Dep't of Corr., No. 08-CV-8795, 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009)). "This is so even when the issue is decided on a motion for summary judgment." Mateo v. Corebine, No. 09-CV-4811 (RJH/DCF), 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases). However, if an inmate has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. See Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004); see also Richard v. LeClaire, 9:15-CV-0006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."), report and recommendation adopted, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019).

 **\*10**  The incidents giving rise to plaintiff's First and Fourth Amendment claims against Valls and Stanton occurred between July 2020 and October 2020. See Am. Compl. at 7, ¶34. As discussed, plaintiff filed a grievance with Valls on August 4, 2020, and Valls denied the grievance on August 5, 2020. See supra Subsection III.B.1; see also Dkt. No. 41-4 at 3-4. Plaintiff was required to appeal to the CAO "within two business days" of receiving Valls' decision. Dkt. No. 41-16 at 4; see Dkt. No. 41-7 at 4. Plaintiff's argument that he was "coerced" into not pursing the matter further does not excuse his failure to exhaust within the time period. Dkt. No. 41-18 at 84; see discussion supra Subsection III.B.2. Thus, the time for plaintiff to exhaust administrative remedies "has long since expired." Calderon v. Doe, No. 9:20-CV-0645 (GLS/CFH), 2021 WL 6278740, at *6 (N.D.N.Y. Nov. 24, 2021), report and recommendation adopted, 2022 WL 43918 (N.D.N.Y. Jan. 5, 2022); see Hrebin, 2021 WL 4312449, at *6 (dismissing with prejudice "because [the] plaintiff's failure to exhaust available remedies relating to the incidents [at the Broome County Jail] giving rise to his present claims—which occurred nearly two years ago—is no longer curable"). As plaintiff's failure to exhaust cannot be remedied at this point, it is recommended that his First and Fourth Amendment claims against Valls and Stanton be dismissed with prejudice. [12]  See Richard, 2019 WL 5197041, at *9.

12     Because dismissal of plaintiff's First and Fourth Amendment claims against Valls and Stanton is recommended based on his failure to exhaust administrative remedies, the undersigned need not address the merits of these claims, nor the defenses proffered in response. See Hrebin, 2021 WL 4312449, at *7 ("[B]ecause dismissal is recommended based on failure to exhaust administrative remedies, the undersigned need not consider [the] defendants' alternative arguments."); see also Scott v. Uhler, 9:16-CV-403 (TJM/CFH), 2019 WL 5197139, at *6 n.10 (N.D.N.Y. July 31, 2019) ("As the undersigned concludes that [the] plaintiff has failed to exhaust his administrative remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's claims."), report and recommendation adopted, 2019 WL 4667495 (N.D.N.Y. Sept. 25, 2019).

### C. Plaintiff's Fourteenth Amendment Claim Against Harder and Valls

Plaintiff claims that Harder and Valls violated his rights under the Fourteenth Amendment by providing him with "unhygienic clothing and linen[s], and [an] inadequate bed size ... from the time of June 6, 2020 until February 10, 2022." Dkt. No. 51 at 16. Defendants argue that plaintiff's Fourteenth Amendment claims fail because plaintiff has not demonstrated (1) an objectively, sufficiently serious constitutional deprivation; (2) that Harder and Valls acted with deliberate indifference; and (3) that Harder

Case 9:24-cv-01077-AJB-TWD   Document 25   Filed 05/05/25   Page 63 of 69

Robinson v. Harder, Not Reported in Fed. Supp. (2024)
2024 WL 1469076

and Valls were personally involved "with respect to [p]laintiff's allegations of receiving dirty laundry and bed linens at the Facility" or his "inadequate bed claim[.]" Dkt. No. 41-6 at 7-16.

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983), and Benjamin v. Fraser, 343 F.3d 35, 49 (2d Cir. 2003), overruled on other grounds by Caiozzo v. Koreman, 581 F.3d 63, 70 (2d Cir. 2009)). "A pretrial detainee's claims are evaluated under the Due Process Clause because, pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." Id. (internal quotation marks, alterations, and citations omitted).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29 (citing Benjamin, 343 F.3d at 50).

> **\*11**  This means that a pretrial detainee must satisfy two prongs to prove a claim[: (1)] an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[;] and [(2)] a "subjective prong"—perhaps better classified as a "mens rea prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions.

Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-37 (1994)).

As to the objective element, the detainee " 'must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness[.]' " Darnell, 849 F.3d at 30 (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013), and LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972)). "[T]here is no static test" to determine whether a deprivation is sufficiently serious; "[t]he conditions themselves must be evaluated in light of contemporary standards of decency." Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). "When a plaintiff alleges multiple unconstitutional conditions of confinement, the court may aggregate the effect of all of the conditions, 'but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.' " Van Hoven v. City of New York, No. 16-CV-2080 (GBD/DF), 2018 WL 5914858, at *7 (S.D.N.Y. Aug. 21, 2018) (quoting Walker, 717 F.3d at 125, and citing Wilson v. Seiter, 501 U.S. 294, 304 (1991)), report and recommendation adopted, 2018 WL 4417842 (S.D.N.Y. Sept. 17, 2018). Each condition "must be measured by its severity and duration, not the resulting injury," and the conditions are not subject to "a bright-line durational or severity threshold." Darnell, 849 F.3d at 32.

As to the subjective element,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

Darnell, 849 F.3d at 35; see Van Hoven, 2018 WL 5914858, at *9 ("A pleading may thus be sufficient to plead this prong where the plaintiff alleges that the unconstitutional conditions in which he was held were actually known to the defendant or,

**Robinson v. Harder, Not Reported in Fed. Supp. (2024)**
2024 WL 1469076

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 64 of 69

for some plausibly stated reason, should have been known to the defendant, and that, despite this, the defendant intentionally or recklessly forced the plaintiff to endure those conditions or failed to take reasonable steps to ameliorate them.") (citing Darnell, 849 F.3d at 35, and Ashcroft v. Iqbal, 556 U.S. 662, 666 (2009)). "In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively." [13] Darnell, 849 F.3d at 35.

[13]    "It is on ... the 'subjective' prong of the claim ... that the analysis diverges for plaintiffs who are convicted prisoners and those who are pretrial detainees." Van Hoven, 2018 WL 5914858, at *7 ("In cases brought under the Eighth Amendment, this subjective prong ... is itself defined subjectively, in terms of what the actor actually knew, and disregarded. In cases brought by pretrial detainees under the 14th Amendment, however, the subjective prong is defined objectively, in terms of what a reasonable person knew, or should have known.") (internal quotation marks and citations omitted).

**\*12**  Here, plaintiff alleges that Harder and Valls provided him "with used, stained and/or dirty underclothing" as well as "inadequate bedding and sleeping arrangements." Am. Compl. at 15 at 7, ¶30. He contends that both Harder and Valls acknowledged his complaints, but "no remedial action was taken." Id. at 7, ¶31. He asserts that their failure to provide "proper accommodations" during his detention at the Broome County Jail amounts to Fourteenth Amendment violations. Dkt. No. 51 at 17.

Plaintiff fails to allege facts showing that he suffered an " 'objectively, sufficiently serious ... denial of the minimal civilized measure of life's necessities.' " Willey v. Kirkpatrick, 801 F.3d 51, 66 (2d Cir. 2015) (quoting Farmer, 511 U.S. at 834). Courts have recognized clothing as a basic human necessity, the denial of which could violate the [Constitution], and the lack of clean clothing raises personal hygiene concerns." Arce v. Coughlin, No. 93-CV-4702 (MBM), 1996 WL 252371, at *5 (S.D.N.Y. May 14, 1996) (collecting cases); see Patterson v. City of New York, No. 11-CV-7976 (DLC), 2012 WL 3264354, at *8 (S.D.N.Y. Aug. 9, 2012) ("[P]risoners are entitled under the constitution to have clothing that is clean or to have an opportunity to clean it themselves.") (internal quotation marks and citations omitted); see also Walker, 717 F.3d at 127 (explaining that the Second Circuit has "long recognized that unsanitary conditions" and "the failure to provide prisoners with ... hygienic materials [can] rise to the level of a constitutional violation"). Further, "sleep is critical to human existence, and conditions that prevent sleep have [also] been held to violate the [Constitution]." Walker, 717 F.3d at 126; see Turner v. City, No. 16-CV-8864 (PAE/RWL), 2017 WL 6942760, at *2 (S.D.N.Y. Dec. 12, 2017) ("The inadequacy of a mattress may, alone or in combination with other factors, constitute an inhumane condition of confinement if it causes or threatens to cause sufficiently serious harm."), report and recommendation adopted sub nom. Turner v. City of New York, 2018 WL 401513 (S.D.N.Y. Jan. 12, 2018).

As defendants argue, "[p]laintiff has failed to set forth any evidence to suggest that he ever received dirty, used clothing or bed linen, nor has he alleged how he was specifically subjected to an unreasonable risk of serious damage to his health when he allegedly came into contact with dirty clothing and bed linen[.]" Dkt. No. 41-6 at 9; see Dillon v. City of New York, No. 12-CV-7113 (LAP), 2013 WL 6978959, at *3 (S.D.N.Y. Nov. 18, 2013) ("[C]ourts [in this Circuit] are extremely reluctant ... to find constitutional violations based on temporary deprivations of personal hygiene and grooming items.") (citations omitted); cf. Johnson v. Schiff, No. 17-CV-8000 (KMK), 2019 WL 4688542, at *15 (S.D.N.Y. Sept. 26, 2019) (determining that the plaintiff met "the objective prong of his conditions of confinement claim, as he [ ] alleged that he was exposed to human excrement and bodily fluids in a poorly ventilated cell over the course of multiple days") (internal quotation marks and citations omitted). By contrast, defendants have submitted relevant pages from the Broome County Jail Inmate Handbook "address[ing] the Facility's policy and procedures with respect to clothing and linen issued to inmates, as well as the laundry exchange of such items." Dkt. No. 41-3 at 1; see Dkt. No. 41-7 at 1-2. The Handbook explains that plaintiff, as an inmate at the Broome County Jail, had access to clean clothing and linens. See Dkt. No. 41-7 at 1-2 (instructing inmates on how to remove and replace dirty clothing and linens with clean clothing and linens); see also Hallett v. Davis, No. 11-CV-4646 (WHP), 2012 WL 4378020, at *4 (S.D.N.Y. Sept. 25, 2012) (concluding that the pretrial detainee plaintiff failed to establish "objectively serious deprivations" because, although the defendants failed to clean the plaintiff's blanket every three months and his clothes twice a week in violation of the New York City Board of Correction Minimum Standards, the plaintiff still "had access to clean linens").

Robinson v. Harder, Not Reported in Fed. Supp. (2024)

2024 WL 1469076

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 65 of 69

**\*13**  Moreover, "the record is devoid of any evidence reflecting that [plaintiff] had a medical condition that specifically required him to have a [different] bed" and "is also devoid of any evidence that the plaintiff's mattress exacerbated a pre-existing medical condition or caused a new medical condition." Dkt. No. 41-6 at 13; see Vazquez v. City of New York, No. 21-CV-1573 (PAE/VF), 2022 WL 17370156, at \*8 (S.D.N.Y. Dec. 2, 2022) (concluding that the plaintiff failed to meet the objective prong of his deliberate indifference claim because the plaintiff's "naked assertion that he suffered pain, a rash, and 'sleep deprivation' as a result of an inadequate bed or mattress, even liberally construed, is insufficient to raise a plausible claim of a constitutional violation"). Specifically, "[p]laintiff's medical file does not reflect that [he] sustained any injuries or exacerbate[ed] any injuries caused by any bed at the Facility." Dkt. No. 41-5 at 7, ¶44; see Dkt. No, 41-3 at 4, ¶21. Defendants have submitted photographs to illustrate plaintiff's sleeping accommodations at the Broome County Jail, noting that "[a]ll of the beds [he] slept on" for "the vast majority of his incarceration" "were longer than his height." Dkt. No. 41-5 at 6-7; see Dkt. Nos. 41-8, 41-9, 49-11, 49-12. Moreover, plaintiff testified that "he knew the padded mattresses at the Facility were not yoga mats [sic] as he had claimed in his amended complaint." Dkt. No. 41-5 at 7, ¶45; see also Dkt. No. 41-18 at 46-47; cf. Bell v. Luna, 856 F. Supp. 2d 388, 397-98 (D. Conn. 2012) (holding that the objective prong of the plaintiff's deliberate indifference claim was met where the inmate plaintiff slept on a mattress that was torn, unstuffed, and smelled like mildew for seven months).

Given defendants' evidence, "[a]t the summary judgment stage, ... it was incumbent on [plaintiff] to come forward with evidence showing that a genuine issue of material fact exists as to whether the [conditions at the Broome County Jail] were objectively deficient." Brown v. City of New York, No. 21-CV-4632 (PGG/SLC), 2023 WL 2908661, at \*10 (S.D.N.Y. Jan. 30, 2023), report and recommendation adopted, 2023 WL 2496089 (S.D.N.Y. Mar. 14, 2023) (citation omitted). Plaintiff's allegations fail to meet that burden, and therefore he has not shown "objectively serious conditions [of confinement] that denied him the minimal civilized measure of life's necessities." Walker, 717 F.3d at 129; see Wilson v. Annucci, No. 18-CV-391 (LEK/TWD), 2020 WL 1979210, at \*6-7 (N.D.N.Y. Apr. 23, 2020) (granting summary judgment where the incarcerated plaintiffs failed to introduce evidence showing that they were exposed to unreasonable risk of serious damage to their health), report and recommendation adopted, 2020 WL 5229375 (N.D.N.Y. Sept. 2, 2020).

"Because plaintiff's claim[s] fail[ ] under the objective prong, the [C]ourt need not reach the [subjective] prong of the deliberate indifference test." Vernsey v. Touron, No. 9:20-CV-992 (DNH/ATB), 2023 WL 2346366, at \*9 (N.D.N.Y. Feb. 8, 2023), report and recommendation adopted sub nom. Vernsey v. Tourn, 2023 WL 2346281 (N.D.N.Y. Mar. 3, 2023); see Goris v. Breslin, 402 F. App'x 582, 584 (2d Cir. 2010) (summary order) ("[W]e need not reach the subjective prong, because Goris has failed to demonstrate that the alleged deprivation was 'sufficiently serious,' as an objective matter, to be actionable under the Eighth [or Fourteenth] Amendment.").

Thus, plaintiff has not demonstrated that a genuine issue of material fact exists as to his conditions of confinement claims. As such, summary judgment is warranted on his Fourteenth Amendment claims against Harder and Valls. [14] It is therefore recommended that plaintiff's Fourteenth Amendment claims against Harder and Valls be dismissed.

14    As dismissal is recommended, the undersigned need not address defendants' alternative arguments that plaintiff's Fourteenth Amendment claims fail due to a lack of personal involvement. See, e.g., Hogan v. Lewis Cnty., No. 7:16-CV-1325 (LEK/ATB), 2020 WL 2850162, at \*9 n.7 (N.D.N.Y. June 1, 2020) ("Because the Court grants the Motion on these grounds, it need not address [the defendant's] personal involvement or qualified immunity arguments.").

### D. Qualified Immunity

Defendants argue that, even if plaintiff's claims are substantiated, they are entitled to qualified immunity. See Dkt. No. 41-6 at 19-20. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 66 of 69

Robinson v. Harder, Not Reported in Fed. Supp. (2024)
2024 WL 1469076

public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

  **\*14**  Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See supra Subsection III.C. As there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F. Supp. 2d at 230; see also Smith v. Sullivan, No. 9:20-CV-659 (DNH/CFH), 2023 WL 3727447, at \*19 (N.D.N.Y. May 3, 2023) ("Here, the Court need not address qualified immunity as an alternative ground to [the] defendants' summary judgment motion because [the] plaintiff has not established a dispute of material fact as to whether [the] defendants violated his constitutional rights."), report and recommendation adopted, 2023 WL 3722137 (N.D.N.Y. May 30, 2023).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 41) be **GRANTED**, and that plaintiff's claims against David Harder, Adam Valls, and David Stanton be **DISMISSED with prejudice**; and it is

**ORDERED**, that the Clerk of the Court amend the case caption to reflect David Harder as the lead defendant; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to U.S.C. § 636(b)(1) and Local Rule 72.1(c), that the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [15]

[15]   If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1469076

---

**End of Document**                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1218983
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicholas ROBINSON, Plaintiff,

v.

David HARDER, David Stanton, Adam Valls, and Sobia Mizra, Defendants.

9:21-CV-1322

|

Signed March 21, 2024

**Attorneys and Law Firms**

NICHOLAS ROBINSON, Plaintiff, Pro Se, 22-B-0369, Woodbourne Correctional Facility, 99 Prison Road, P.O. Box 1000, Woodbourne, NY 12788.

JENNIFER L. CHURCH, ESQ., JOSHUA T. TERRELL, ESQ., BROOME COUNTY ATTORNEY'S OFFICE, Attorneys for Defendants Harder Stanton, and Valls, Broome County Office Building, 60 Hawley Street, P.O. Box 1766, Binghamton, NY 13902.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On December 10, 2021, *pro se* plaintiff Nicholas Robinson ("plaintiff"), who was at the time an inmate in the custody [1] of the Broome County Sheriff's Department, filed this 42 U.S.C. § 1983 action alleging that various Broome County officials violated his constitutional rights while he was being held as a pre-trial detainee at the Broome County Jail. Dkt. No. 1. Along with his complaint, plaintiff also sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3, 5.

[1]    Plaintiff has since been transferred to the custody of the New York State Department of Corrections and Community Supervision. *See* Dkt. No. 64.

On February 18, 2022, this Court granted plaintiff's IFP Application, conducted an initial review of his complaint, and dismissed the pleading without prejudice based on various defects. Dkt. No. 7. At that time, the Court gave plaintiff an opportunity to file an amended pleading, *id.*, and he thereafter did so, Dkt. No. 15.

On July 22, 2022, this Court reviewed plaintiff's amended complaint, dismissed some of his claims, but permitted his claims against defendants (1) David Harder, (2) David Stanton, (3) Adam Valls, and (4) Sobia Mizra to proceed to discovery. Dkt. No. 16. Those four defendants answered, Dkt. Nos. 20, 39, conducted some discovery, *see, e.g.*, Dkt. No. 28, and then the Broome County defendants (1,2,3) moved for summary judgment. [2] Dkt. No. 41. That motion was fully briefed. Dkt. Nos. 51, 52, 53.

[2]    Defendant Mizra has also moved for summary judgment. Dkt. No. 57. That motion remains pending.

On February 20, 2024, U.S. Magistrate Judge Christian F. Hummel advised by Report & Recommendation ("R&R") that defendants' motion for summary judgment be granted and plaintiff's claims against the Broome County defendants be dismissed. Dkt. No. 64.

2024 WL 1218983

Plaintiff sought, Dkt. No. 65, and received, Dkt. No. 66, an extension of time in which to lodge objections to Judge Hummel's R&R. But that deadline has passed without a timely filing. *See id.* Thus, upon review for clear error, the R&R is accepted and will be adopted in all respects. FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 64) is ACCEPTED;

2. The Broome County defendants' motion for summary judgment (Dkt. No. 41) is GRANTED;

3. Plaintiff's claims against defendants David Harder, Adam Valls, and David Stanton are DISMISSED with prejudice; and

4. Defendant Mizra's motion (Dkt. No. 57) REMAINS PENDING.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 1218983

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Robinson v. Harder, Not Reported in Fed. Rptr. (2024)**

2024 WL 4677424

Case 9:24-cv-01077-AJB-TWD    Document 25    Filed 05/05/25    Page 69 of 69

2024 WL 4677424
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Nicholas ROBINSON, Plaintiff-Appellant,

v.

David HARDER, et al., Defendants-Appellees,

Broome County Sheriff, et al., Defendants.

24-1156
|
August 28, 2024

N.D.N.Y., 21-cv-1322, Hurd, J., Hummel, M.J.

**Attorneys and Law Firms**

Nicholas Robinson, Woodbourne, NY, Pro Se.

Joshua T. Terrell, Broome County Attorney's Office, Binghamton, NY, for Defendants - Appellees David Harder, David Stanton, Adam Valls.

Jonathan E. Symer, Steinberg Symer & Platt, LLP, Poughkeepsie, NY, for Defendant - Appellee Sobia Mirza.

Present: William J. Nardini, Beth Robinson, Alison J. Nathan, Circuit Judges.

**Opinion**

 **\*1**  Appellant, pro se, moves for in forma pauperis status. This Court has determined that it lacks jurisdiction over this appeal because the district court has not issued a final order as contemplated by 28 U.S.C. § 1291. *See Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008). In particular, the district court has not yet ruled on Appellant's claims against defendant Dr. Sobia Mirzer. For that reason, it is hereby ORDERED that the appeal is DISMISSED and the motion is DENIED as moot. This order does not prevent Appellant from appealing any final judgment the district court may ultimately issue in this case.


**All Citations**

Not Reported in Fed. Rptr., 2024 WL 4677424

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.